Frank **RELEFORD**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

· No. 16137.

United States Court of Appeals
Ninth Circuit.

March 2, 1961.

Anthony J. Wiechers, Richard H. Foster, San Francisco, Cal., for appellant.

George M. Yeager, U. S. Atty., Fairbanks, Alaska, for appellee.

Before STEPHENS, HAMLEY and HAMLIN, Circuit Judges.

HAMLEY, Circuit Judge.

Frank Releford appeals from a judgment of conviction entered on a jury verdict finding him guilty of a violation of the White Slave Traffic Act, 18 U.S.C.A. § 2421. Six errors are specified, one being that he was deprived of counsel of his own choice.

Some time after the indictment was returned against him, Releford retained attorney Wendell P. Kay to represent him. The case was originally set for trial at Anchorage, Alaska, on April 28, 1958. It was continued on motion of appellant to Monday, May 19, 1958. Prior to the date of trial Kay was hospitalized in Seattle, Washington.

As the trial date approached it became apparent that Kay would not be released from the hospital prior to that time. On the afternoon of Thursday, May 15, 1958, S. J. Buckalew, Jr., an attorney who shared office space with Kay, filed an affidavit to that effect. In this affidavit it was also recited that hospital authorities had advised that in all probability Kay would be released from the hospital within fifteen days.

On the following morning the district court called Releford in for a hearing on the matter of his representation by counsel at the trial. Following that hearing the court directed Releford to file an affidavit by 3:00 p. m. on that day stating why Kay could not be present for the trial set for the following Monday. This notwithstanding the fact that such an affidavit was already on file.

In the early part of that Friday afternoon another hearing was held on the matter of Releford's lack of counsel to represent him at the trial. Releford was apparently not present at this hearing, but Buckalew was present and made a statement. According to the clerk's minutes, he made this statement "for and in behalf of the defendant." The hearing was then recessed until later the same afternoon.

At this third Friday hearing only Buckalew appeared before the court. He again made a statement which according to the clerk's minutes was "for and in behalf of the defendant." The court thereupon ordered Buckalew to bring Releford into court for the signing of a pauper's oath and the appointment of Buckalew as his counsel. This was to be done "as of" Monday morning, May 19, 1958, prior to trial time.

When the case was called for trial Monday morning Buckalew told the court that Releford had declined to sign the pauper's oath, asserting that he was not a pauper. Moreover, Buckalew informed the court, Releford had told him that he did not desire Buckalew to appear for him as a substitute for his retained counsel, Kay. Buckalew stated that he was willing to defend Releford but would need the rest of the day to prepare after the jury had been selected. A colloquy between the court and Releford then took place, as quoted in the margin.[1]

---

1. "The Court: Mr. Releford, do you consent to having Mr. Buckalew represent you in the trial of this case in light of the facts of your regular counsel?

"Defendant Releford: Well, Your Honor, I wouldn't exactly not prefer, but due to the facts I feel that maybe in one sense I would prefer another attorney to the extent of the law which is based itself——

"The Court: I didn't understand that. Which is the law?

"Defendant Releford: Which is the law, yes.

After this colloquy and without further exploration of the problem with either Releford or Buckalew, the court disregarded Releford's stated preference to be represented by Kay and his unwillingness to be represented by Buckalew. After ascertaining that Government counsel did not object to a recess for the remainder of the day after a jury had been selected, the court ordered the impanelling process to begin. The jurors called to the box were informed by the court that Releford was represented by Buckalew. The latter actively participated in the voir dire examination and exercised all the defense's peremptory challenges. A jury was completed and the trial was recessed at 11:20 a. m. to reconvene the following morning.

When the trial was resumed the next morning Buckalew approached the bench with the Assistant United States Attorney, and a lengthy conference ensued. This conference was held out of hearing of the jury but with the court reporter present. Buckalew complained that since Releford would not sign a pauper's oath, the court could not appoint Buckalew as Releford's attorney, thereby depriving Buckalew of any compensation.[2] Buckalew told the court:

"[I]t is asking a lot to ask a man to beat his brains out, particularly this kind of a case. If it was a good respectable crime, like robbery or murder, that is something else, but this kind of case. * * * [T]his isn't one of the kind of cases that counsel leaps in for the cause of justice."

The court stated that it was unfortunate that Releford would not take a pauper's oath as this deprived the court of the power to appoint Buckalew as Releford's counsel. The court stated, however, that it was not the court's fault nor Releford's fault that Kay was not present at the trial. The court expressed the view that under the circumstances it was necessary for Buckalew to accept the responsibility of defending Releford. This responsibility was Buckalew's, the court said, because Buckalew and Kay shared offices.[3] The court told Buckalew he would have to look to Kay for his compensation.

Apparently another reason the court was insistent that Buckalew represent Releford at the trial was that because he officed with Kay he knew something about the case. Buckalew immediately disabused the court's mind as to this, pointing out that he had never discussed the case with Kay. Buckalew conceded, however, that he had been working on the case since the previous Friday and had

"The Court: State that again. I didn't understand you.

"Defendant Releford: I think that he is a very good lawyer, as far as I am concerned, but I would prefer Mr. Kay providing if the court will allow any chance to get him back in town so he could represent me.

"The Court: Well, the thing that is bad about it, Mr. Releford, is that we have gone along with Mr. Kay as far as we can. We just can't continue it any more for that purpose. As you recall, it was set down at one time and continued at his request and set down again and he is not able to go to court again. He is not able to go to court today. Now, the court has the responsibility of seeing that the work is accomplished that is set out for it. I think we have been more than understanding in his case. Mr. Buckalew is a former district attorney. He has had lots of experience and I am sure will represent you very ably before this court. I consider Mr. Buckalew able counsel and [he] has had lots of experience in this respect. I hope you understand the court's position, that is, we can't continue it further. I have no objection to granting Mr. Buckalew's request if the Government does not oppose it. We can pick the jury this morning and then go to trial tomorrow morning."

2. Under the practice then in effect in Alaska, counsel appointed to represent an indigent defendant were apparently entitled to receive certain compensation.

3. As to this the court said:
"[Y]ou have more of a moral obligation than any other person based upon the fact you office with counsel who is not present. That is one of the responsibilities you take on when you office with counsel, is to protect him when he is not able to protect himself."

since then discussed the case with Releford.

In view of the court's insistence, Buckalew finally stated that he would represent Releford at the trial. He asked, however, for permission to refer to himself before the jury as court-appointed counsel. The court indicated that this would not be proper since it was not the fact that Buckalew had been appointed by the court. This caused Buckalew to once more express dissatisfaction with the arrangement. He expressed the view that the responsibility the court sought to place upon him existed only in the case of law partners. The court then responded:

> "If you want to just state that you haven't anything to do with this case, refuse to handle it, there is nothing I can do about it but it would place your partner in a bad light or your associate."

Faced with this virtual ultimatum Buckalew said, "That is all right, Your Honor," thus indicating that he would defend Releford at the trial. It may be assumed that Releford, as was true of the jury, heard none of this colloquy and thus was not advised of Buckalew's extreme reluctance to represent him. Releford was given no further opportunity to state his wishes.

The trial resumed and led to Releford's conviction. Buckalew conducted as vigorous a defense as could have been expected considering the amount of time he had in which to prepare. Appellant makes no complaint to the contrary, though he does contend that Buckalew was not given sufficient time to prepare and that appellant was prejudiced thereby. The substance of appellant's specification of error, however, is that he was denied the right to counsel of his own choice, and that under the circumstances of the case, this is reversible error regardless of whether prejudice is shown.

■■ We agree. A person charged with crime in a federal court is entitled under the Sixth Amendment to the assistance of counsel for his defense. Johnson v. Zerbst, 304 U.S. 458, 463, 58 S.Ct. 1019, 82 L.Ed. 1461. Where such a person is able to obtain counsel for himself and does not ask the court to appoint counsel, he must be given a reasonable time and a fair opportunity to secure counsel of his own choice.[4]

■ An accused's right to select his own counsel cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice. Lee v. United States, supra note 4. Thus if a defendant does not act expeditiously in securing counsel of his choice or fails to give the court prompt notice that his retained counsel will be unable to attend the trial, the trial court may, in the exercise of its sound discretion, do what is reasonably necessary to meet the situation. Likewise, where the inability of retained counsel to serve, though blameless, gives promise of unreasonable delay, expense or inconvenience in completing the trial, the court may require the defendant to secure other counsel.

In so far as this record discloses, Releford acted expeditiously in employing Kay as his counsel. There is likewise no contention that he did not promptly advise the court when it became apparent that Kay would be unable to be present at the trial as then calendered. Moreover, Releford, as the court itself stated, was not responsible for Kay's inability to attend.

On the Thursday or Friday prior to the Monday when the jury trial was scheduled to begin, the court was advised that Kay would not be available to defend Releford for at least two weeks. Under these circumstances the refusal of the court to strike the case from the trial calendar and reset it for a substantially later date would probably not be an abuse of discretion. But the proper

---

4. Crooker v. State of California, 357 U.S. 433, 439, 78 S.Ct. 1287, 2 L.Ed.2d 1448; Chandler v. Fretag, 348 U.S. 3, 9, 75 S.Ct. 1, 99 L.Ed. 4; Lee v. United States, 98 U.S.App.D.C. 272, 235 F.2d 219, 221; Smith v. United States, 5 Cir., 216 F.2d 724, 726.

alternative to such action was to inform Releford that the trial could not be that long delayed and that a continuance would be granted for such reasonable time as might be necessary for Releford to secure substitute counsel and for such counsel to prepare.

Neither of these courses was followed. Instead, Releford was first asked to execute a pauper's oath so that the court could appoint Buckalew as his attorney, thus entitling the latter to receive compensation for such service. Releford indicated that he preferred Kay and specifically stated that he did not wish to be represented by Buckalew.[5] Moreover, Releford declined to execute a pauper's oath, stating that he was not a pauper.

Faced with this impasse, the trial court expressly declined to appoint Buckalew as Releford's counsel but nevertheless insisted that he serve in that capacity. The sanction held out if Buckalew refused was the placing of Kay "in a bad light" with the court.

Since Buckalew only shared offices with Kay, he had no responsibility, moral or otherwise, to represent the nonindigent Releford. Buckalew did not willingly serve as Releford's counsel. He was not appointed by the court as Releford's attorney. He was not chosen by Releford. Thus he had no standing to represent Releford at the trial.

We therefore hold that, contrary to the Sixth Amendment, appellant was deprived of the assistance of counsel of his own choice.

Apart from the question as to whether Buckalew had time to prepare, no actual prejudice was shown with respect to his participation in the trial as counsel for Releford. In our view, however, where there has been complete disregard of the defendant's right to choose his own counsel, prejudice will be assumed.

The only other specification of error which need be noted is the contention that the evidence does not support the verdict. This argument is based primarily on the fact that the principal witness for the Government changed her testimony several times as to vital matters, thus committing perjury as to some of her testimony.

These changes of testimony occurred before the jury, and the prosecution is not chargeable with the knowing use of perjured testimony. In view of these circumstances and in the light of our examination of the entire record, it is our opinion that the evidence is sufficient to support the verdict. Thus a direction that judgment be entered dismissing the action would be inappropriate.

The judgment is reversed and the cause is remanded with directions to grant appellant a new trial.

5. His desire not to be represented by Buckalew would presumably have been more forcefully expressed had he been aware of Buckalew's reluctance to serve

and his low opinion of a White Slave offense as compared to "a good respectable crime, like robbery or murder."