**Joseph D. SLAPPY, Petitioner-Appellant,**

**v.**

**Paul John MORRIS, Warden,
Respondent-Appellee.**

**No. 79–2519.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 14, 1980.

Decided June 29, 1981.

As Amended on Denial of Rehearing and
Rehearing En Banc Oct. 19, 1981.

Michale B. Bassi, San Francisco, Cal., for petitioner-appellant.

Dane R. Gillette, San Francisco, Cal., for respondent-appellee.

Before GOODWIN, ALARCON and NELSON, Circuit Judges.

ALARCON, Circuit Judge:

Joseph D. Slappy, a California state prisoner, petitioned for a writ of habeas corpus alleging, *inter alia*, that in his state trial he was deprived of his sixth amendment right to counsel. The district court denied the petition. Because we find that Slappy was deprived of his sixth amendment right to counsel, we hold that the writ of habeas corpus should issue.

## PERTINENT FACTS

Petitioner Slappy was charged by information in state court proceedings with rape, robbery, burglary, oral copulation, and false imprisonment. At Slappy's arraignment, the San Francisco public defender's office was appointed to represent him. Deputy Harvey Goldfine of that office represented Slappy at his preliminary hearing, and also conducted the investigation into Slappy's case.

Slappy's trial was scheduled to begin on a Thursday. On the Friday preceding trial, Deputy Bruce Hotchkiss, also of the San Francisco public defenders office, met Slappy at his jail cell, and advised him that he, Hotchkiss, would represent Slappy in trial. This change in representation was due to

Goldfine's appendicitis attack. Hotchkiss again visited Slappy on the Tuesday before trial.

On the day of trial, Slappy complained to the trial judge about the short amount of time between Hotchkiss' assignment to Slappy's case and the trial. The trial judge interpreted this complaint as a motion for a continuance, and denied the motion. Slappy continued to insist that Hotchkiss had insufficient time to prepare for trial. Hotchkiss, however, claimed that he was prepared. He explained the background of his assignment to the case, stating to the court that "Mr. Goldfine, who was to try this case, was operated on for appendicitis, that is how it was transferred." The trial judge did not inquire as to how long Goldfine would be incapacitated.

Throughout the trial, Slappy refused to cooperate with Hotchkiss and insisted that Goldfine, not Hotchkiss, was his lawyer. Slappy was so dissatisfied with his representation that he continually interrupted the proceedings, insisting that his right to counsel was being infringed.[1]

Slappy was convicted of robbery, burglary, and false imprisonment. The jury was unable to agree on the rape and oral copulation charges and a mistrial was declared on those charges.

A second trial on the remaining charges began the next week, with Hotchkiss remaining as Slappy's counsel. Slappy continued to insist that Goldfine, not Hotchkiss, was his attorney. Communication between Slappy and Hotchkiss broke down to such a point during the second trial that Hotchkiss asked the court to remove him as counsel because he felt he could not render

---

1. For example, at one point in the trial the record shows the following occurred:

   THE DEFENDANT: Your Honor, I'm leaving that part up to you. I asked you may I be excused. If you don't want to excuse me, I'll sit right here. What difference does it make?
   THE COURT: Well, I would urge you then Mr. Slappy to remain seated and in the Courtroom, and should you desire to discuss this case further with your Counsel, why you certainly can let me know, or through your Counsel let me know.
   THE DEFENDANT: What do I have to say to get through to you, your Honor, what do I have to say to make you understand. I have told you two or three times, and then you keep telling me about talking to my Counsel. I don't have no attorney, I told you I don't have no attorney. My attorney's in the hos-

   pital, my attorney's name is Mr. P.D. Goldfine, Harvey Goldfine, that's my attorney, he's in the hospital.
   THE COURT: Well, I am going to ask you then under the circumstances, Mr. Slappy, to remain in the Courtroom and to listen to the proceedings and listen to the progress of this case.
   THE DEFENDANT: That's up to you, that's up to you what you do, your Honor. If you say so I'll remain here, but I am not participating in the trial, I'm through with it, as of now I am through with this trial. I was through with it the 24th when this P.D. told me that I didn't have no defense from my charges. I was through then, and that's why I didn't see him when he come down to see me.

effective assistance in the face of such conflict. After a conference in chambers, Hotchkiss withdrew his motion. Slappy was ultimately convicted of rape and oral copulation in this trial.

In both trials, Hotchkiss advised Slappy to testify. Slappy refused to testify in the first trial, and only decided to testify in the second trial after the jury was instructed. This request was denied by the trial court.

Slappy's convictions were affirmed by the California Court of Appeal, and the California Supreme Court refused to grant a hearing. Slappy thereafter filed a petition for a writ of habeas corpus in the District Court for the Northern District of California. The issues raised in the petition for habeas corpus were fairly presented to the California courts.

## DISCUSSION

Slappy contends that the trial court's refusal to grant a reasonable continuance until his attorney, Harvey Goldfine, was well enough to represent Slappy at trial was a denial of his sixth amendment right to counsel.

■ We recognize at the outset that an indigent defendant does not have an unqualified right to the appointment of counsel of his own choosing. *See Brown v. Craven*, 424 F.2d 1166 (9th Cir. 1970). *But cf. Harris v. Superior Court*, 19 Cal.3d 786, 567 P.2d 750, 140 Cal.Rptr. 318 (1977) (under certain circumstances it may be an abuse of discretion not to appoint an attorney designated by an indigent). This is not a case of a defendant seeking to choose a particular attorney in the first instance. Here the trial court had appointed Harvey Goldfine to represent Slappy. Slappy was merely seeking a continuance of the trial date so that his attorney would be able to represent him at trial. The record clearly establishes the fact that Slappy and Goldfine had entered into an attorney-client relationship at least as of the time of the preliminary hearing.

■ The right to counsel includes more than just the right to representation by competent counsel at trial. This right would be without substance if it did not include the right to a meaningful attorney-client relationship.[2] The special nature of the attorney-client relationship was explained by the Alaska Supreme Court in *McKinnon v. State*:

> The attorney-client relationship involves "an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney." Often, the outcome of a criminal trial may hinge upon the extent to which the defendant is able to communicate to his attorney the most intimate and embarrassing details of his personal life. Complete candor in attorney-client consultations may disclose defenses or mitigating circumstances that defense counsel would not otherwise have uncovered. At the very least, an open exchange between attorney and client will often foreclose the possibility of surprise at trial.

*McKinnon v. State*, 526 P.2d 18, 22 (Alaska 1974) (Footnotes omitted).

The attorney-client relationship is accorded special protection because of its impact on the truth-finding process. In *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Supreme Court held that a defendant in a state court proceeding could not get a fair trial unless he had assistance of counsel at trial. But representation at trial is without substance if the defendant does not have confidence in his attorney's ability to represent the defendant's best interests. It is unlikely that a criminal defendant will have a legal education. He, therefore, will have to rely on his attorney's advice for the most basic decisions in a criminal trial—whether to plead guilty, whether to testify, whether to present a defense, and which witnesses to call. If the defendant does not trust his attorney, he may be unwilling to follow his

---

2. Recognizing the importance of the attorney-client relationship, courts and legislatures have instituted attorney-client evidentiary privileges to facilitate communication between attorney and client. *See, e. g.,* J. Weinstein & M. Berger, 2 Weinstein's Evidence 503 [02] (1979); *Baird v. Koerner*, 279 F.2d 623, 629–30 (9th Cir. 1960); Cal.Evid.Code §§ 950–955 (West 1980). These privileges, by protecting communications from the client to the attorney, facilitate communication. The existence of a privilege, however, conflicts with the objective of truth seeking. Despite this negative effect on the truth seeking process, the importance of open communication between client and attorney has resulted in the institution and acceptance of these privileges.

attorney's advice in these most important areas.

Several appellate courts have found unconstitutional the trial court's failure to take measures to allow the defendant to continue at trial with his retained counsel. In *Releford v. United States*, 288 F.2d 298 (9th Cir. 1961), this court held that there was a denial of the right to counsel under the following facts: The defendant had retained counsel (Kay) to represent him on criminal charges. Kay became ill shortly before trial, and was expected to be unable to participate in trial for about two weeks. The trial court refused to grant a continuance to allow Kay to represent the defendant at trial or to allow the defendant to secure a chosen substitute for trial. Instead, the judge forced the defendant to go to trial with a second, unwanted, attorney. The Ninth Circuit reversed the defendant's conviction, holding that the defendant had been deprived of his right to counsel because the trial judge refused to grant a continuance.

Similarly, in *Gandy v. Alabama*, 569 F.2d 1318 (5th Cir. 1978), the Fifth Circuit held that a habeas petitioner was deprived of his right to due process when the trial judge refused to grant a continuance or otherwise insure counsel's presence. In *Gandy*, petitioner's retained counsel could not be present at the day of the scheduled trial because of a conflicting civil trial. The trial judge refused to grant a continuance, and forced another attorney on the petitioner. The Fifth Circuit, while noting that the decision to grant a continuance is generally vested in the trial judge's discretion, held that the refusal to grant a continuance in such circumstances was so unfair as to deny the petitioner his rights to due process.

The Seventh Circuit, in *United States v. Seale*, 461 F.2d 345 (7th Cir. 1972), held that forcing a defendant to proceed with unwanted counsel, when retained counsel was ill, was an abuse of discretion. The *Seale* court noted that the defendant should have been given a reasonable continuance to obtain the services of either his retained counsel, or some chosen substitute.

We recognize that the cases discussed above involved *retained* counsel. We see no reason to distinguish between appointed and retained counsel in the context of preserving an attorney-client relationship. We find ourselves in agreement with the California Supreme Court's statement in *Smith v. Superior Court*, 68 Cal.2d 547, 440 P.2d 65, 68 Cal.Rptr. 1 (1968),

> A superficial response is that the defendant does not pay his fee, and hence has no ground to complain as long as the attorney currently handling his case is competent. But that attorney-client relationship is not that elementary: it involves not just the casual assistance of a member of the bar, but an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney. This is particularly essential, of course, when the attorney is defending the client's life or liberty. Furthermore, the relationship is independent of the source of compensation, for an attorney's responsibility is to the person he has undertaken to represent rather than to the individual or agency which pays for the service.... It follows that once counsel is appointed to represent an indigent defendant ... the parties enter into an attorney-client relationship which is no less inviolable than if counsel had been retained. To hold otherwise would be to subject that relationship to an unwarranted and invidious discrimination arising merely from the poverty of the accused.

*Id.* at 561–62, 440 P.2d at 74, 68 Cal.Rptr. at 10. *See also Cuyler v. Sullivan*, 446 U.S. 335, 344–45 & n.9, 100 S.Ct. 1708, 1716 & n.9, 64 L.Ed.2d 333 (1980) (no reason to distinguish between retained and appointed counsel when determining whether defendant received adequate representation).

Because of the importance of the attorney-client relationship to the substance of the defendant's sixth amendment right to counsel, we hold that the sixth amendment (as incorporated by the fourteenth amendment) encompasses the right to have the trial judge accord weight to that relationship in determining whether to grant a continuance founded on the temporary unavailability of a defendant's particular attorney. In considering the continuance, the trial court must balance the defendant's constitutional right to counsel against the societal interest in the "prompt and efficient administration of justice." *Gandy v. Alabama*, 569 F.2d 1318, 1323 (5th Cir. 1978). In the instant case, the trial judge failed to inquire as to the probable length of Goldfine's unavailability. In the absence of the information such an inquiry would have revealed, the trial judge could not

engage in the balancing required to protect defendant's rights. In refusing to grant a continuance, therefore, the trial judge violated Slappy's constitutional right to counsel.[3]

The record clearly demonstrates the sincerity of Slappy's desire to be represented by Goldfine, and the state has not contended that Slappy was acting in bad faith. In concluding that Slappy was denied his sixth amendment right to counsel, we find it significant that there is nothing in the record from which it can be inferred that Slappy's request for a continuance was motivated by a desire to delay his trial for an improper purpose. We need not reach the question here of whether the same result would obtain if it were shown that the defendant's request for a continuance was made in bad faith.

▆ Determining that Slappy was denied his sixth amendment right to counsel does not dispose of this claim; we must also determine whether this type of sixth amendment violation requires the defendant to establish prejudice before a writ of habeas corpus can issue. We conclude that prejudice need not be shown under these facts. In *Releford v. United States*, 288 F.2d 298 (9th Cir. 1961), this court stated:

> Apart from the question as to whether [the second attorney] had time to prepare, no actual prejudice was shown with respect to his participation in the trial as counsel for *Releford*. In our view, however, where there has been complete disregard of the defendant's right to choose his own counsel, *prejudice will be presumed. Id.* at 302 (emphasis added).

In another portion of the opinion, the court stated that the denial of the right to counsel under those facts "is reversible error regardless of whether prejudice is shown." *Id.* at 301.

In holding that under these facts no showing of prejudice is required for reversal, we are acting consistently with Supreme Court and Ninth Circuit precedents. There are two lines of Supreme Court cases which deal with right to counsel: one holding that no showing of prejudice is required for reversal; the other requiring a showing of prejudice for reversal. This case fits within the former, not requiring a showing of prejudice for reversal.

These two lines of cases were discussed, compared and distinguished in *Cooper v. Fitzharris*, 586 F.2d 1325, 1331–33 (9th Cir. 1978) (*en banc*), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979). In *Cooper*, a habeas petitioner asserted that he received ineffective assistance of counsel based on defense counsel's acts and omissions at trial. This court held that: "When the claim of ineffective assistance of counsel rests upon specific acts and omissions of counsel at trial, as it does in this case, relief will be granted only if it appears that the defendant was prejudiced by counsel's conduct." *Id.* at 1331. As support for this statement, the *Cooper* court cited *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). In *Chambers*, a habeas petitioner alleged that a belated appearance of counsel resulted in his being rendered ineffective assistance of counsel. Specifically, he alleged that defense counsel failed to make certain suppression motions. The Supreme Court held that an inquiry into prejudice was warranted before reversal.[4]

---

3. We do not, of course, mean to imply that a continuance must be granted whenever a defendant's particular attorney is unavailable. What is required is that the appropriate balancing take place. *See Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964). *Compare Gandy v. Alabama*, 569 F.2d 1318, 1324–25 (5th Cir. 1978) (granting habeas petition because trial court's evaluation of factors and reconciliation of values in refusing to grant a continuance was so arbitrary as to violate principles of due process) *with Giacalone v. Lucas*, 445 F.2d 1238 (6th Cir. 1971), *cert. denied*, 405 U.S. 922, 92 S.Ct. 960, 30 L.Ed.2d 793 (1972) (denying habeas petition based on conclusion that trial court's denial of continuance based on medically related absence of attorney was in accordance with due process).

4. In holding that prejudice is not required in the instant case, we are not ignoring the following language in *Chambers*: "But we are not disposed to fashion a *per se* rule requiring reversal of every conviction following tardy appointment of counsel...." 399 U.S. at 54, 90 S.Ct. at 1982–1983. The instant case presents an unusual claim arising from a case of attorney substitution and a consequential belated appointment. The allegation here is not that the belated appointment prevented counsel from performing acts at trial resulting in ineffective assistance; the claim is that the court, in not allowing a reasonable continuance, prevented counsel from fulfilling normal functions—from forming and exploiting an attor-

In *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) and *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the Supreme Court held that, under the facts presented therein, prejudice was irrelevant when the right to counsel was denied. In these cases, either no counsel was provided, or counsel was prevented by the court from fulfilling normal functions. In *Gideon*, no defense counsel was appointed. In *Geders*, the court prohibited counsel from consulting with his client during an overnight, midtrial recess. In *Herring*, a state statute allowed the trial judge to prohibit defense counsel from making a summation. In *Glasser*, as in *Holloway*, the court required defense counsel to represent defendants with conflicting interests. In *Powell*, the court did not provide defense counsel with adequate opportunity to consult with defendants and prepare for trial.

In reconciling these cases with *Chambers*, the *Cooper* court wrote: "When no counsel is provided, or counsel is prevented from discharging his normal functions, the evil lies in what the attorney does not do, and is either not readily apparent on the record, or occurs at a time when no record is made." 586 F.2d at 1332. The instant case is analogous to the *Gideon-Geders-Glasser* line of cases. The trial court's failure to consider adequately Slappy's attorney-client relationship when ruling on the continuance denied Slappy his sixth amendment rights to counsel. The second attorney's effectiveness at trial was irrelevant to the impact of the denial of the right to counsel.

▌ Our holding that Slappy need not establish prejudice is not inconsistent with *United States v. Veatch*, 647 F.2d 995 (9th Cir. 1981). In *Veatch*, on the second and last morning of trial, one of the defendant's three lawyers received word that his father died during the night. The defendant moved for a continuance so that the attorney could return home and make the necessary arrangements. The district court de-

nied the motion. The attorney decided to remain at trial and participated in closing arguments. On appeal, the defendant contended that the denial of the continuance required reversal of the conviction. The circuit court disagreed, stating that '[a]ctual prejudice to the defendant must be shown before the denial of a continuance will be reversed.' *Id.* at 1005.

In the instant case, however, the question was not whether the district court properly denied a continuance. Rather, the question here is what inquiry a trial court judge must make before ruling on a continuance motion. We have held that because the attorney-client relationship is so important to the right to counsel, it must be accorded weight in the trial judge's decision as to whether to grant a continuance. If a trial court does not attempt to ascertain the length of continuance necessary to insure counsel's presence at trial, and the attorney with whom the defendant has an attorney-client relationship does not appear at trial, then the defendant has been deprived his or her right to counsel. The conviction must be reversed, irrespective of any showing of prejudice.

*Veatch* is distinguishable in that the attorney remained at trial and therefore the attorney-client relationship was not affected by the denial of the continuance. Also, in *Veatch*, it is not apparent from the opinion whether the court ascertained the length of continuance necessitated because of the death of the attorney's father.

Slappy also contends that he was deprived of effective assistance of counsel because the trial judge refused to remove his attorney, Hotchkiss, after a showing of irreconcilable conflict. Because we reverse and remand on grounds mentioned above, it is unnecessary to reach the merits of this issue.

Slappy's contention that he was denied due process because the trial judge refused to allow him to testify also has been rendered moot by our disposition of the matter.

The judgment is REVERSED. On remand the district court may temporarily hold Slappy's petition in abeyance and shall grant the petition unless California authorities, within a reasonable period, not exceeding sixty days, grant Slappy a new trial.

ney-client relationship with defendant. The crux of Slappy's claim is that the court's actions denied him of his right to counsel. *Chambers* is readily distinguishable. Its language,

therefore, does not suggest that we must require some showing of prejudice to justify a reversal in this case.