447 A.2d 305

**COMMONWEALTH of Pennsylvania**

v.

**James M. WOLFE, Appellant.**

Superior Court of Pennsylvania.

Submitted June 24, 1981.

Filed June 25, 1982.

Petition for Allowance of Appeal Denied Nov. 30, 1982.

H. Brown Fry, Mifflintown, for appellant.

Randall E. Zimmerman, District Attorney, Mifflintown, for Commonwealth, appellee.

Before PRICE, BECK and JOHNSON, JJ.

JOHNSON, Judge:

Appellant was charged with burglary,[1] theft,[2] receiving stolen property[3] and conspiracy.[4]  The charges arose out of

1.  18 Pa.C.S.A. § 3502(a) (Purdon 1973).

2.  18 Pa.C.S.A. § 3921(a).

3.  18 Pa.C.S.A. § 3925(a).

4.  18 Pa.C.S.A. § 903(a).

an incident on Sunday October 29, 1978, when the appellant and a co-conspirator allegedly removed a safe containing cash, stamps, keys and business records from the office of the president of a shirt manufacturing plant. Following a jury trial, appellant was found guilty and sentenced to pay the costs of prosecution, to make restitution to the victim and to undergo imprisonment in a state institution for not less than two years and three months and not more than six years, with credit for time served.

We reverse and grant a new trial.

Because of the nature of the errors asserted in this appeal it is necessary to recount in some detail the developments at the trial.

On the day of trial, Tuesday, May 8, 1979, trial defense counsel filed notice of an alibi defense,[5] having only been made aware of such defense the day before. At trial the Commonwealth's evidence consisted of the testimony of an alleged accomplice, Bonnie Wieseman, an employee of the shirt factory, who testified to having accompanied the co-conspirators in her car to and from the shirt factory on the evening of the burglary. The Commonwealth then called Patricia Zong to the stand. This prompted a sidebar conference at which the Commonwealth's offer of proof showed that Mrs. Zong would testify that appellant and his co-conspirator had brought the safe in question to her house and opened it with her tools.

Defense counsel, at sidebar, objected to the introduction of this testimony, claiming surprise because the name of this witness had not been given to him by the Commonwealth in its response to his informal request for discovery. *See* Pennsylvania Rules of Criminal Procedure 305, 42 Pa.C.S.A.

---

5. Pa.R.Crim.P. 305C(1)(a), 42 Pa.C.S.A. (Purdon Pamp.1982), provides that a defendant who intends to offer an alibi defense should file notice thereof at the time required for filing the omnibus pretrial motion. Pa.R.Crim.P. 307 provides that the omnibus pretrial motion should be filed within 30 days after arraignment unless, *inter alia*, the attorney was not aware of the grounds for the motion.

(Purdon Pamp.1982). The judge ordered a recess. From that point, until trial resumed the next morning, the jury was not present at any of the proceedings involved in this appeal. After the recess the judge decided that there was a question as to whether or not Mrs. Zong was an "eyewitness", but that to resolve the matter he would give defense counsel an opportunity to interview her before she testified.

In anticipation of a possible assertion by Mrs. Zong of the fifth amendment privilege against self-incrimination, special counsel was summoned by the court to advise Mrs. Zong. Following discussion with special counsel Mrs. Zong refused to testify, asserting her fifth amendment privilege. The judge ruled that the privilege was properly asserted, and after further discussion on matters not pertinent to this appeal, ordered another recess.

The record shows that during the recess defense counsel had raised a matter with the judge in camera. The judge decided that this should be a matter of record. Accordingly he directed defense counsel, the defendant, a court reporter and deputy sheriffs to retire to his chambers for an in camera conference. There, defense counsel explained that until the offer of proof of Mrs. Zong's testimony he had planned to defend the charges on the basis that the defendant was innocent. But upon counsel's asking the defendant about Mrs. Zong and her proffered testimony, the defendant responded that he thought he had told counsel that he had committed the burglary.

Defense counsel told the court that he concluded therefore that as he would then be offering perjured testimony from the defendant and the two alibi witnesses he must withdraw from the case in order not to violate an ethical rule by aiding in the commission of perjury. The judge pointed out that defense counsel did not necessarily know that the alibi witnesses would be lying. Defense counsel disagreed and insisted upon withdrawing even on pain of being cited for contempt. The judge finally permitted the withdrawal, and informed the defendant that he would appoint the public defender in order that the trial proceed.

The defendant stated at least three times during this colloquy that he did not want the public defender, and wanted to acquire counsel of his own choice. The judge's reaction to this objection to the public defender was, on the record, as follows:

I think my obligation to the defendant and to the court and to the public is to provide as fair a trial as I can under the circumstances. I am reluctant to even let you move for a mistrial at this point or continue the case because I don't know that that would be a voluntary decision on your part. What I have told you is that I will substitute Mr. Manbeck. Whether you use him or not is up to you. You indicate that you don't want him and you can't represent yourself and the obvious answer would be to postpone the trial; but to do that, under the circumstances, is not a voluntary decision on your part—to move for a mistrial and terminate this trial.... You don't have counsel. The counsel I have assigned for you you don't want and it is in the middle of the trial. I think I must direct that this trial continue with Mr. Manbeck as back-up counsel to sit in, and you can use him to the extent that you want to use him, and see how it goes.

The judge then called the jury back into the courtroom and excused them for the rest of the day, thus giving the substituted counsel some hours to prepare for the rest of the trial.

The next morning, Wednesday, May 9, 1979, the appointed defense counsel made a motion for a continuance in order that the defendant be able to acquire counsel of his own choosing. This motion was denied. Trial resumed. Mrs. Zong did not testify. The alibi witnesses did testify. The defendant did not testify. The jury found the defendant guilty of burglary, theft and conspiracy, which verdict the judge molded to guilty of burglary and conspiracy.

This appeal is brought by a third counsel. Appellant asserts firstly that the omission of Mrs. Zong's name from the Commonwealth's response to defense counsel's informal request for discovery so prejudiced his right to a fair trial

that he should have a new one. He asserts secondly that being without effective counsel at the in camera conference he was unable to request a mistrial and therefore the trial court erred in not declaring a mistrial sua sponte. Because of the result we reach in this case we shall deal firstly with appellant's second assertion.

To begin with, we note that no one at any time made a motion for a mistrial, although the judge did raise the matter at the in camera conference as quoted above.[6] Secondly, the substitute counsel did actually move for a continuance. Thirdly, the defendant's repeated statements to the judge in camera that he refused appointed counsel and wanted to retain his own counsel were tantamount to requests for the time and opportunity to do so. We choose therefore to frame the issue before us in terms of the propriety of the denial of a motion for continuance, rather than of a non-existent motion for mistrial.

The allowance of continuances is largely a matter within the discretion of the lower court, and the denial of a continuance does not constitute reversible error unless there is an abuse of discretion. *Commonwealth v. Kittrell*, 285 Pa.Super. 464, 427 A.2d 1380 (1981). The Supreme Court of the United States has said:

> [I]t is not every denial of a request for more time that violates due process even if the party . . . is compelled to defend without counsel . . . . Contrariwise, *a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.* . . . There are no mechanical tests for deciding when a denial of a continuance is so

**6.** *Compare Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977). In that case, a Commonwealth witness named Darcy had given statements to the police implicating defense counsel in a plot to murder another Commonwealth witness. The defense attorney denied the allegation and indicated that he would need to testify in order to discredit Darcy's testimony. For this reason he would be unable to render effective assistance to his client. He therefore introduced his client to independent counsel. The defendant and both counsel then moved for a mistrial which was granted. *Id.*, 472 Pa. at 635–636, 373 A.2d at 105–106.

arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

*Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849–850, 11 L.Ed.2d 921, 931 (1964) (emphasis added) (citations omitted) (no deprivation of the right to counsel where the appellant had been given five days' notice of the hearing in question, where the witnesses were available, the evidence fresh and available, two short continuances had already been granted, and the motion at issue was made on the day of the hearing).

In *Moore v. Jamieson,* 451 Pa. 299, 306 A.2d 283 (1973), the petitioner was an attorney challenging a local rule of court which prohibited attorneys representing ten or more criminal defendants whose indictments were over twelve months old from entering an appearance in any additional criminal cases. Our Supreme Court said:

> It is clear we must balance conflicting rights which reach constitutional proportions in order to resolve this case. On the one hand we have the right of criminal defendants to counsel of their choice and the right of attorneys to practice criminal law. On the other, we have the state's constitutional duty to provide speedy trials and its obligation to its citizens to have criminal violations adjudicated quickly.

451 Pa. at 309, 306 A.2d at 288–289. This balancing test has since been applied by our appellate courts in cases involving a defendant's insistence on certain counsel where such insistence would necessitate a last-minute postponement of the scheduled trial. *See Commonwealth v. Robinson,* 468 Pa. 575, 364 A.2d 665 (1976) (no abuse of discretion in the denial by the trial court of a continuance where privately retained counsel had taken no action to prepare for trial, not communicated with his client, not responded to any notices of the date of trial, one continuance had already been granted, and a substitute counsel had been appointed well in advance of trial); *Commonwealth v. Egan,* Pa.Super. (1982) [No. 1591 Philadelphia 1980, filed February 26, 1982, Petition

for Reargument filed] (reversible error to deny petition to withdraw guilty plea entered after defendant tried to insist on replacing appointed counsel with privately-retained counsel, no continuance allowed by lower court); *Commonwealth v. Andrews*, 282 Pa.Super. 115, 422 A.2d 855 (1980) (no abuse of discretion in denying continuance where defendant had appeared at trial seventeen months after his arrest, without counsel, after due notice); *Commonwealth v. Atkins*, 233 Pa.Super. 202, 336 A.2d 368 (1975) (denial of right to counsel where the defendant refused representation at trial by associate of her own counsel and therefore had to represent herself when trial court denied continuance).

Each of these Pennsylvania cases makes it clear that there is indeed a right to counsel of one's choice, but that right is not absolute, yet the defendant's need for time to acquire his own counsel must be weighed against the public need for the efficient administration of justice. *See also Commonwealth v. Baines*, 480 Pa. 26, 389 A.2d 68 (1978) (no error in trial court removing defense counsel and appointing new counsel, where original counsel had entered an appearance in one hundred and ten criminal cases which had not yet been tried and had indicated that he did not know when he would be available to try appellant's case); *Paullet v. Howard*, 634 F.2d 117 (3d Cir. 1980) (no abuse of discretion or denial of due process in denial of continuance where defense counsel's associate appeared to try the case, where attorney had warned client that this might occur were he unavailable, where associate was familiar with the case, and where several continuances had already been granted).

In *Slappy v. Morris*, 649 F.2d 718 (9th Cir. 1981), *cert. granted*, —— U.S. ——, 102 S.Ct. 1748, 72 L.Ed.2d 160 (1982), the Court of Appeals for the Ninth Circuit held that the trial court had violated the defendant's right to counsel in refusing to grant a continuance until the defendant's counsel was well enough to represent him at trial. The Court of Appeals ruled that the trial court was unable, without having inquired into the probable length of counsel's unavailability due to ill health, to conduct the required balancing test between the defendant's constitutional right

to counsel and society's interest in the prompt and efficient administration of justice. 649 F.2d at 721. The court also held that a denial of a continuance in these circumstances warranted a reversal of the conviction, irrespective of any showing of prejudice. *Id.* at 723.

In the case before us the lower court was faced with a difficult situation. In mid-trial the defendant had made a revelation to his lawyer which caused the lawyer to perceive the situation as one where he would be offering perjured testimony. The lawyer insisted on withdrawing from the case.[7] As a result, counsel and client were in an adversarial posture. There was no one in chambers to speak for or to

7. We take no position in this case with respect to the lawyer's actions. Our examination of what has been written by scholars and other authorities on the matter shows us that there is no easy answer to the dilemma facing a lawyer whose client wishes to offer perjured testimony.

The Pennsylvania Supreme Court Code of Professional Responsibility, 1974, 42 Pa.C.S.A. (Purdon 1975 and Supp.) clearly forbids a lawyer from knowingly using perjured testimony or false evidence. *See* Disciplinary Rule 7–102(A)(4). The Code also provides for mandatory withdrawal of a lawyer from a case where he knows that his continued employment will result in a violation of a Disciplinary Rule. *See* DR 2–110(B)(2). The Code provides for permissive withdrawal of a lawyer where his client seeks to pursue an illegal course of conduct or insists that the lawyer pursue an illegal or unethical course of conduct. *See* DR 2–110(C)(1)(b), (c).

The ABA Committee on Ethics and Professional Responsibility, Informal Opinion 1314, March 25, 1975, states:

if the attorney knows in advance that his client intends to use false or perjured testimony, it is his duty to advise the client that the lawyer must take one of two courses of action:

(1) Withdraw at that time in advance of the submission of the perjured testimony or false evidence; or

(2) Report to the court or tribunal the falsity of the testimony or evidence, if the client insists on so testifying.

It is axiomatic that the right of a client to effective counsel in any case (criminal or civil) does not include the right to compel counsel to knowingly assist or participate in the commission of perjury or the creation or presentation of false evidence.

*Id.* at 2. *See also,* Informal Opinion 1318, January 13, 1975, which also emphasized the primary duty of the lawyer to protect the confidentiality of privileged communication from the client.

The American Bar Association (ABA) Standards for Criminal Justice which deal with the defense function contain a proposed standard for dealing with a potentially perjurious defendant. *See* ABA

concern himself with the defendant. We are not persuaded that counsel knew for a fact that perjurious testimony was to be presented, as the judge himself stated at the in camera

Standards for Criminal Justice, Standards Relating to the Defense Function (2d ed. 1980). Defense Function Standard 4–7.7 provides that the lawyer, upon discovering that the client plans to commit perjury, must first try to dissuade him. If the client insists on taking the stand the lawyer must attempt to withdraw, without specifying the reason. If for one reason or another withdrawal is not possible, the lawyer must limit his examination to matters which will not elicit the perjurious testimony, permitting the defendant to give a free narrative if he chooses to make a statement to the fact-finder. The lawyer must also make a record of the situation. This standard insists that the lawyer not reveal the proposed perjury to the court.

In new rules of professional conduct, the ABA Special Commission on Evaluation of Professional Standards is taking a different direction. In its Model Rules of Professional Conduct (Proposed Final Draft, May 30, 1981), the Commission's approach to the ethical dilemma here is that the lawyer's duty of candor to the tribunal overrides his duty to keep his client's revelations confidential. *See* Erickson, *The Perjurious Defendant: A Proposed Solution to the Defense Lawyer's Conflicting Ethical Obligations to the Court and to his Client,* 59 Denver L.J. 75, 84–86 (1981). *See also* Wolfram, *Client Perjury,* 50 So.Cal.L.Rev. 809 (1977); Callan & David, *Professional Responsibility and the Duty of Confidentiality: Disclosure of Client Misconduct in an Adversary System,* 29 Rutgers L.Rev. 332 (1976).

The case law on the issue of projected client perjury is sparse. In *Lowery v. Cardwell,* 575 F.2d 727 (9th Cir. 1978), the defendant was tried non-jury on a charge of first degree murder. After testimony placing the defendant in the victim's presence next to the car (where the victim was found shot at close range) immediately before firecracker-like sounds were heard, the defendant took the stand and testified that she had not shot the victim. Counsel requested a recess. In chambers, counsel, without giving a reason, requested permission to withdraw, which was denied. Trial resumed. Counsel asked no further questions of the defendant, made no reference to her testimony, and argued only that the state's case was subject to reasonable doubt, or at least not one of first degree murder. The court found defendant guilty of second degree murder. The Court of Appeals for the Ninth Circuit, on a habeas corpus appeal, concluded that the motion to withdraw in these particular circumstances had deprived the defendant of a fair trial, and accordingly ordered that the writ issue. The court said that the fact finder could easily infer that perjury was the cause for counsel's wish to withdraw. Secondly, the court found that the lawyer was now in a position of opposition to, instead of advocacy in, his client's defense.

The Court of Appeals was careful not to condemn the procedure suggested by the ABA Standard 7.7, *supra,* which it called a "passive refusal to lend aid to perjury." 575 F.2d at 731. The court did find fault, however, with counsel's motion to withdraw in a case where the judge was the fact-finder. *Id.*

proceeding. And so in essence the situation appears very much as though once the lawyer decided that the proposed alibi testimony was false, he threw up his hands and abandoned the attempt to defend his client. If the alibi evidence was only supplied to him at the last minute, one can only ask how he had originally planned to present the defense of innocence, and why could he not have proceeded with his originally planned defense strategy. The record does not reveal that the lower court considered these, or other questions, in permitting defense counsel to withdraw.

It is clear that, after the lower court permitted the withdrawal of retained defense counsel, the defendant desired the right to secure his own replacement counsel and this was communicated to the trial judge. Moreover, substitute counsel renewed this request on behalf of the defendant the next day. It was at this critical point that the trial court should have conducted the required balancing test.

Prior to the court's designation of the public defender as substitute counsel, no inquiry appears to have been made by

In *United States ex rel. Wilcox v. Johnson*, 555 F.2d 115 (3d Cir. 1977), the Court of Appeals for the Third Circuit affirmed the grant of a habeas corpus writ. At a jury trial for rape, the defendant sought to present an alibi defense rather than the consent defense preferred by his counsel. A recess was allowed for the two to reconcile their differences. Counsel then informed the judge that if the defendant testified she would move to withdraw as counsel. She then told her client that if he testified she would be permitted to withdraw. The defendant consequently chose not to testify. The Court of Appeals found that, whether or not a criminal defendant has a constitutional right to testify, this defendant was entitled to habeas corpus relief because the trial judge, by threatening him with the loss of his counsel, had violated his sixth amendment rights as well as his statutory right to testify, and thus deprived him of a fair trial. The thrust of the court's decision goes to the importance of the confidentiality between client and counsel.

The *Wilcox* court concluded the opinion with the statement that an attorney may not volunteer a mere unsubstantiated opinion that his client's protestations of innocence are perjured. Perjury must be a certainty. *Id.* at 122. This has a bearing on the case before us, as is seen in the in camera discussion where the judge asked defense counsel immediately after defense counsel revealed the situation to him—"how do you know these witnesses are lying?" In other words, it is crucial in this type of situation that the lawyer know for sure that actual perjury is involved; he must not merely suspect it.

the trial judge as to whom, if anyone in particular, the defendant wished to contact, whether he could afford to retain private counsel, or how much time he thought he would need. The withdrawal of the first lawyer had occurred early on a Tuesday afternoon, and court had adjourned for the day at 1:50 p.m.

The next morning, the public defender, as part of his motion on behalf of the defendant for a continuance, represented to the court that the defendant had sufficient means to retain private counsel and was requesting sufficient time to be able to secure a lawyer of his own choice. After the denial of this motion, the entire trial was concluded and the verdict rendered the same day.

Where, as here, the loss of counsel was not of the defendant's own making, we are not prepared to conclude that the effect upon the judicial system would have been adverse, had the trial court explored the possibility of a continuance, midweek, to allow the defendant to seek to exercise his limited right to counsel of his choice.

Since no inquiry was made as to the probable length of time needed for the defendant to reappear with private counsel, we cannot say that any balancing of the competing interests could properly have been made. While we appreciate the necessity of avoiding any protracted recess after the jury has been empaneled, we are unable to conclude on this record that the exercise of the defendant's limited right would have unduly disrupted the administration of criminal justice. Accordingly, we must conclude that the denial of the request for time and opportunity to acquire counsel of defendant's own choosing, on these facts, constituted an abuse of the lower court's discretion.

For these reasons, the judgment of sentence must be reversed and the case remanded for a new trial.

In the interests of judicial economy, however, we shall also consider appellant's other allegation of error which, for the reasons given below, we find to be without merit. Appellant asserts that the omission of Mrs. Zong's name

from the Commonwealth's response to defense counsel's informal request for discovery so prejudiced his right to a fair trial that he should have a new one. Defense counsel's informal request had asked, *inter alia*, for the names and addresses of eyewitnesses the Commonwealth intended to call at time of trial, and the names and addresses of all witnesses to the transaction described in the Information whom the Commonwealth intended not to call. To these requests the Commonwealth responded, respectively, with Bonnie Wieseman's name, and no other, and that the police files were available to defense counsel for inspection.

The first question, therefore, is whether Patricia Zong was an eyewitness whose name should have been given to defense counsel under Pa.R.Crim.P. 305B(2)(a), 42 Pa.C.S.A. (Purdon Pamp.1982), which provides for the discretionary discovery of the names and addresses of eyewitnesses.[8] She was not a witness to the breaking and entering of the factory or to the removal of the safe from the factory. Therefore, she was not literally an eyewitness to the crime charged.

The former rule on disclosure, Pa.R.Crim.P. 310 (effective January 1, 1965 until December 31, 1977), allowed a discretionary grant of discovery of the defendant's written statements. It prohibited pretrial disclosure of written statements by witnesses for the prosecution. Earlier cases in this court denied the disclosure of a list of prosecution witnesses. *See, e.g., Commonwealth v. Bederka*, 459 Pa. 653, 331 A.2d 181 (1975); *Commonwealth v. Noyer*, 265 Pa.Super. 544, 402 A.2d 679 (1979).

8. Pa.R.Crim.P. 305 provides for pretrial discovery, both informal and by motion. Some disclosure is mandatory and other disclosure is discretionary. The section of the rule at issue in this case is Pa.R. Crim.P. 305B(2) which provides in part:

*Discretionary with the Court*: In all court cases, ... if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

(a) the names and addresses of eyewitnesses[.]

The new rule, Pa.R.Crim.P. 305, effective January 1, 1978, substantially changes the discovery rule. It encourages informal discovery and incorporates the ABA discovery standards as guidelines in determining what is discoverable.[9] Although Rule 305 expressly provides for the discretionary discovery of "eyewitnesses" to the crime, it does not answer the question whether other witnesses are discoverable at all if they do not fall within the classes of witnesses specifically discoverable, such as those with exculpatory,[10] identification [11] or expert evidence.[12]

According to the principles codified in the Statutory Construction Act of 1972, 1 Pa.C.S.A. §§ 1501–1991 (Purdon Pamp. 1982), we must construe the words of the rule according to their common and approved usage, 1 Pa.C.S.A. § 1903(a), and where words are clear and unambiguous we are not to read them otherwise, 1 Pa.C.S.A. § 1921(b). We read the word "eyewitness" to mean a witness who saw the incident in question with his/her own eyes. Although in the case before us the witness in question did see an incident connecting the defendant to the crime, she did not witness the crime with which he was charged. She therefore does not fall within the category of eyewitnesses whose names and addresses may be ordered to be given to the defense counsel after a motion for pretrial discovery has been filed as provided for in Pa.R.Crim.P. 305B(2)(a). *See Commonwealth v. Bey*, 294 Pa.Super. 229, 439 A.2d 1175 (1982). In *Bey* defense counsel had requested a mistrial on the grounds of surprise and prosecutorial misconduct when the Common-

9. *See* ABA *Standards Relating to Discovery and Procedure Before Trial* (Approved Draft, 1970), 1.1 and 1.2, as guiding principles in applying Pa.R.Crim.P. 305B(2) and C(2). *Comment*, Pa.R.Crim.P. 305, 42 Pa.C.S.A. (Purdon Pamp. 1982). *See also*, Note, *Rule 305: Expanded Criminal Discovery*, 82 Dick.L.Rev. 573 (1978); Comment, *Pretrial Discovery and Inspection—New Criminal Rules for Pennsylvania*, 23 Vill.L.Rev. 308 (1977).

10. Pa.R.Crim.P. 305B(1)(a).

11. Pa.R.Crim.P. 305B(1)(d).

12. Pa.R.Crim.P. 305B(1)(e).

wealth, without notice, introduced testimony by the mother of the victim to the effect that the defendant had threatened revenge on the victim after the victim's testimony at the preliminary hearing. We held that, as the mother was not an eyewitness within the meaning of Pa.R.Crim.P. 305B, disclosure of her name as a witness was not required, and that if it was required by the spirit of liberal discovery espoused by Rule 305, as appellant suggested, any harm to the defense was cured by the continuance ordered by the judge in order to enable defense counsel to investigate the matter and to procure witnesses to rebut the testimony. *See* Pa.R.Crim.P. 305E.

■ Appellant also contends that Mrs. Zong's name should have been supplied in response to his request for a list of witnesses that the Commonwealth did not intend to call. Pennsylvania's appellate courts have said that when the prosecution does not call an eyewitness to the stand, the Commonwealth must apprise the defense of the witness's name and whereabouts at trial, unless the defense is able or should have been able to procure the witness unaided. *Commonwealth v. Gee,* 467 Pa. 123, 134, 354 A.2d 875, 879 (1976); *Commonwealth v. Carter,* 427 Pa. 53, 55, 233 A.2d 284, 285 (1967); *Commonwealth v. Jackson,* 224 Pa.Super. 280, 283, 303 A.2d 519, 521 (1973), *rev'd on other grounds,* 457 Pa. 79, 319 A.2d 161 (1974).

The rationale for this rule is basically the principle of fairness. "[T]he district attorney is a quasi-judicial officer and as such should be motivated by a desire to accomplish justice rather than by an inordinate zeal to obtain convictions . . . ." *Commonwealth v. Giacobbe,* 341 Pa. 187, 196, 19 A.2d 71, 75 (1941). *See Commonwealth v. Schmidt,* 437 Pa. 563, 567, 263 A.2d 382, 384 (1970); *Commonwealth v. Horn,* 395 Pa. 585, 589, 150 A.2d 872, 874 (1959). *See also, Commonwealth v. Cramer,* 168 Pa.Super. 1, 76 A.2d 661 (1950), where this court said, in response to an allegation by the appellant that the Commonwealth had a duty to produce certain eyewitnesses in court so that if the prosecution did

not call them to testify, the witnesses would be available to be called by the defense:

> We think common fairness made it the duty of the Commonwealth to have produced these witnesses in court at the trial, or to show reasonable efforts to produce them; or, in view of the defendant's efforts to obtain the witnesses, that a continuance be granted. All of the difficulty and any motion for a continuance would have been avoided had the Commonwealth conformed to the practice suggested in *Commonwealth v. Sarkis et al.*, 164 Pa.Super. 194, 199, 63 A.2d 360, and had the eyewitnesses present in court, notifying the defendant that the Commonwealth would not call them. See also *Commonwealth v. Keller*, 191 Pa. 122, 134, 43 A. 198; *Commonwealth v. Deitrick*, 221 Pa. 7, 15, 70 A. 275. The question was not whether the testimony of the eyewitnesses would be helpful to the Commonwealth,—which was not bound *to call* them. The appellant's contention in this regard is sustained.

*Commonwealth v. Cramer*, 168 Pa.Super. at 4, 76 A.2d at 662–663.

The ABA Standards quoted in the Comment to Pa.R. Crim.P. 305 [13] explain that the rules for full and free discovery are to "provide adequate information for informed pleas, expedite trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process." [14] With this purpose in mind, together with the principles of fairness espoused in our case law, it would

**13.** *See* note 9, *supra.*

**14.** The *Standards for Discovery and Procedure Before Trial* quoted in the Comment to Pa.R.Crim.P. 305 were those of the proposed draft of 1970. Subsequently the ABA House of Delegates approved a final version in 1978. *See* ABA *Standards for Criminal Justice,* (2d ed. 1980). Standard 11–2.1 provides for prosecutorial disclosure, upon request by the defense, of *inter alia* the names and addresses of witnesses. Contrast Federal Rule of Criminal Procedure 16 which does not provide for discovery of the names of witnesses to be called by the government. A proposed subsection which did provide for disclosure of a list of government witnesses was omitted. *See* Advisory Committee Notes following Fed.R.Crim.P. 16.

seem that Mrs. Zong's name should at least have been made available to the defense, *which indeed it was.* The prosecution complied with the spirit of liberal discovery by allowing defense counsel to look through the police files.

Appellant cites *Commonwealth v. Bartman*, 240 Pa.Super. 495, 367 A.2d 1121 (1976), for the proposition that the Commonwealth having answered defense counsel's request for discovery misled defense counsel into thinking that no other evidence existed, thus causing defense counsel to adopt a certain strategy which he might not have adopted had he known of the rest of the Commonwealth's evidence. We do not find *Bartman* apposite, because the unexpected testimony in *Bartman* was introduced, and the jury heard it, and thus it did have a highly prejudicial effect. In the case before us the unexpected testimony was not introduced, thus there was no prejudice from it.

Accordingly, in this case, Mrs. Zong was not an eyewitness and therefore not discoverable on those grounds; her name was available to the defense through the police files, thus the requirement of prosecutorial fairness was satisfied and the principle of liberal discovery was complied with; she did not testify, thus the defendant was not prejudiced by her arrival on the scene at the trial. There was therefore no reversible error in the prosecution's calling Mrs. Zong to testify without giving her name to the defense ahead of time.

To summarize, appellant's first allegation of error is found to be without merit, but where, as here, a defense counsel withdraws mid-trial, substitute counsel is appointed, and no inquiry conducted into the feasibility of defendant's request for time or opportunity to obtain new private counsel, there is an abuse of discretion in summarily denying a continuance without balancing the competing interests of a defendant's right to counsel of his choice and society's right to the swift and efficient administration of justice. Judgment of sentence is reversed and new trial granted.