**Emmanuel Charles WHITESIDE, Appellant,**

v.

**David SCURR, Warden, Appellee.**

No. 83–1015.

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1984.

Decided Sept. 19, 1984.

Rehearing En Banc Denied Dec. 24, 1984.

Patrick R. Grady, Asst. Appellate Defender, State Appellate Defender Office, Des Moines, Iowa, for appellant.

Thomas J. Miller, Atty. Gen. of Iowa, Thomas D. McGrane, Asst. Atty. Gen., Des Moines, Iowa, for appellee.

Before McMILLIAN, Circuit Judge, BENNETT,* Circuit Judge, and ARNOLD, Circuit Judge.

McMILLIAN, Circuit Judge.

Emmanuel Charles Whiteside appeals from a final judgment entered in the District Court for the Southern District of Iowa denying his petition for writ of habeas corpus. For reversal appellant argues the district court erred in holding that counsel's threats to seek to withdraw, disclose confidential discussions and testify against him did not deny him due process and effective assistance of counsel. For the reasons discussed below, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

A state court jury convicted appellant of second degree murder for the stabbing death of Calvin Love in 1977. Appellant was sentenced to forty years imprisonment. Appellant and two companions had gone to Love's apartment to get some marijuana. During an argument about the marijuana, appellant stabbed Love as Love was moving toward him. Appellant's theory of defense was self-defense. According to appellant, Love had been reaching for a gun beneath a pillow when appellant stabbed him. When questioned by defense counsel in preparation for trial, appellant stated that he had not actually seen the gun, but that he thought that he had seen a gun and was convinced that Love had one because Love had a reputation for carrying a gun. Counsel questioned appellant's two companions and Love's girlfriend about the gun. They denied actually seeing a gun, although appellant's companions believed that Love probably did have a gun. Counsel also learned that the police had found no gun during a quick search of the room where the stabbing occurred. Nor had the apartment manager found a gun. Counsel personally searched the room for the gun without success. During the course of his investigation, however, counsel discovered that several hours after the stabbing, Love's girlfriend and his family had forced the police padlock on the apartment and had removed everything from the apartment.

Appellant was anxious about the success of his theory of self-defense if the gun was not found. Counsel had earlier advised

* The Honorable Marion T. Bennett, Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

appellant that the gun itself was not essential to his theory of self-defense and that the defense would be successful if the jury was convinced that appellant reasonably believed that Love had had a gun. Shortly before trial, appellant told counsel that he had seen something "metallic" in Love's hand just before the stabbing. This discrepancy precipitated the disagreement between appellant and counsel that underlies this appeal. Counsel told appellant that if he insisted upon testifying that he saw a gun, then he (counsel) would move to withdraw, advise the state trial judge that the testimony was perjurious and testify against him.

At trial appellant testified only that he thought Love had a gun and that he had acted to protect himself from an assault by Love with the gun. Appellant was found guilty of second degree murder. On appeal to the state supreme court appellant argued that counsel's threats to withdraw, advise the state trial judge about his testimony and testify against him prevented him from presenting his defense and thus denied him a fair trial. The state supreme court rejected this argument, finding that "counsel was convinced with good cause to believe [appellant's] proposed testimony would [have been] deliberately untruthful" and that, consistent with the Iowa Code of Professional Responsibility for Lawyers, "[c]ounsel properly refused to be a partner in such a dishonest and deceitful scheme." *State v. Whiteside,* 272 N.W.2d 468, 471 (Iowa 1978). The state supreme court commended counsel for the "high ethical manner" in which the matter was handled. *Id.*

In 1981 appellant filed a petition for writ of habeas corpus alleging that counsel's threats to withdraw, advise the state trial judge and testify against him denied him the right to effective assistance of counsel, the right to present a defense and due process in violation of the fifth, sixth and fourteenth amendments. The district court found that the state courts' finding that appellant would have committed perjury was fairly supported by the record and that appellant had failed to establish by convincing evidence that this finding was errone-

ous. *Whiteside v. Scurr,* No. Civil–81–246–C, slip op. at 2 (S.D.Iowa Dec. 7, 1982). The district court noted the constitutional right to testify did not include perjury and concluded that appellant was not denied due process or effective assistance of counsel because counsel prevented him from testifying falsely. *Id.* The district court denied the petition and this appeal followed.

As a preliminary matter, we note that during oral argument the state questioned whether appellant had exhausted available state remedies. The district court concluded that appellant had exhausted his due process and right to present a defense claims but may not have fairly presented the substance of the ineffective assistance of counsel claim to the state supreme court. The district court concluded, however, that because the state supreme court had already determined that the state code of professional responsibility vindicated counsel's actions and had in fact commended counsel for the "high ethical manner" in which the matter had been handled, further state court proceedings would be futile and that appellant was not required to exhaust the ineffective assistance of counsel claim. *Whiteside v. Scurr,* No. Civil–81–246–C, slip op. at 3–4 (S.D.Iowa Feb. 24, 1982) (order).

■ We agree with the district court that further state court proceedings on the ineffective assistance of counsel claim would be futile. In addition, the ineffective assistance of counsel claim is so closely tied to the due process and right to present a defense claims, which have clearly been exhausted, that these claims should be considered together in this petition. *See Batten v. Scurr,* 649 F.2d 564, 569 (8th Cir. 1981). In the present case appellant's due process, right to present a defense and ineffective assistance of counsel claims represent different legal arguments offered in support of essentially one ground for relief: that his defense counsel's actions prevented him from presenting his defense and denied him a fair trial. *See Sanders v.*

*United States*, 373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963). This ground for relief, the underlying facts, and the due process and right to present a defense claims were expressly raised in appellant's state court briefs. Appellant in his state court brief also expressly raised the ineffective assistance of counsel claim in the essentially identical context of conflict of interest between counsel and the defendant and submitted an appendix which included portions of the hearing on the motion for new trial about counsel's threat to seek to withdraw, advise the state trial judge and testify against him. In these circumstances, the substance of appellant's federal habeas corpus ground for relief was fairly presented to the state courts. *See Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed. 3 (1982) (per curiam), *citing Picard v. Connor*, 404 U.S. 270, 275, 277–78, 92 S.Ct. 509, 513–514, 30 L.Ed.2d 438 (1971).

The problem presented on the merits in this case is what kind of action defense counsel, representing a defendant in a criminal case, may constitutionally pursue when counsel believes that the client intends to testify falsely. This issue implicates both due process and effective assistance of counsel considerations and has been extensively debated, but by no means resolved, by several courts and many commentators. *See United States v. Campbell*, 616 F.2d 1151, 1152 (9th Cir.) (no breach of duty by defense attorney who substantially complied with ABA Proposed Defense Function Standard 4–7.7), *cert. denied*, 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980); *Lowery v. Cardwell*, 575 F.2d 727, 730–31 (9th Cir.1978) (bench trial; due process analysis); *id.* at 732 (Hufstedler, J., specially concurring) (effective assistance of counsel analysis); *United States ex rel. Wilcox v. Johnson*, 555 F.2d 115, 120–22 (3d Cir.1977) (due process analysis and informative discussion of effective assistance of counsel); *Butler v. United States*, 414 A.2d 844, 849–50 (D.C.1980) (banc) (due process analysis); *Johnson v. United States*, 404 A.2d 162, 163–64 (D.C. 1979) (veracity or falsity of defendant's testimony must not be conjectural); *Thornton v. United States*, 357 A.2d 429, 433–36 (D.C.) (following ABA Proposed Defense Function Standards), *cert. denied*, 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976); *Commonwealth v. Wolfe*, 301 Pa.Super. 187, 447 A.2d 305, 309–10 & n. 7 (1982); *In re Goodwin*, 279 S.C. 274, 305 S.E.2d 578, 579–80 (1983) (following ABA Proposed Defense Function Standards). *Compare* ABA Project on Standards for Criminal Justice: The Prosecution Function and the Defense Function, Proposed Defense Function Standard 4–7.7 (2d ed. 1980) (ABA Proposed Defense Function Standard) (Appendix A), *with* ABA Model Rules of Professional Conduct 3.3 & comment (1983) (ABA Model Rules) (Appendix B). *See generally* M. Freedman, Lawyers' Ethics in an Adversary System (1975); Brazil, *Unanticipated Client Perjury and the Collision of Rules of Ethics, Evidence, and Constitutional Law*, 44 Mo.L.Rev. 601 (1979); Callan & David, *Professional Responsibility and the Duty of Confidentiality: Disclosure of Client Misconduct in an Adversary System*, 29 Rutgers L.Rev. 332 (1976); Erickson, *The Perjurious Defendant: A Proposed Solution to the Defense Lawyer's Conflicting Ethical Obligations to the Court and to His Client*, 59 Den.L.J. 75 (1981); Freedman, *Professional Responsibility of the Criminal Defense Lawyer: The Three Hardest Questions*, 64 Mich.L.Rev. 1469 (1966); Wolfram, *Client Perjury*, 50 S.Cal.L.Rev. 809 (1977).

■ Our discussion begins with the following observation: our analysis does not deal with the ethical problem inherent in appellant's claim. We are concerned only with the constitutional requirements of due process and effective assistance of counsel. As the ABA Model Rules 3.3 comment, appendix B, states, the Constitution prevails over rules of professional ethics, and a lawyer who does what the sixth and fourteenth amendments command cannot be charged with violating any precepts of professional ethics. This is a very controversial matter and we commend counsel for conscientiously attempting to address the

problem of client perjury in a manner consistent with professional responsibility.

■ Appellant first argues that counsel improperly acted on the basis of mere suspicion that appellant would testify falsely. The reason why counsel believes that the defendant intends to testify falsely is an important threshold question because "[w]here ... the veracity or falsity of the defendant's testimony is conjectural, the ethical dilemma does not arise.'" *Butler v. United States*, 414 A.2d at 850, *citing Johnson v. United States*, 404 A.2d at 164. Both ABA Model Rule 3.3 and ABA Proposed Defense Function Standard 4–7.7 presuppose that defense counsel *knows* that the defendant's testimony will be false on the basis of either independent investigation or prior discussions with the defendant or both. Mere suspicion or inconsistent statements by the defendant alone are insufficient to establish that the defendant's testimony would have been false. *See Butler v. United States*, 414 A.2d at 850–51 (inconsistent statements); *Johnson v. United States*, 404 A.2d at 164 (inconsistency between two proffered defenses); *Commonwealth v. Wolfe*, 447 A.2d at 310 n. 7 (suspicion). Counsel must act if, but only if, he or she has "a firm factual basis" for believing that the defendant intends to testify falsely or has testified falsely. *See United States ex rel. Wilcox v. Johnson*, 555 F.2d at 122. It will be a rare case in which this factual requirement is met. Counsel must remember that they are not triers of fact, but advocates. In most cases a client's credibility will be a question for the jury.

■ In the present case the state supreme court found that "counsel was convinced with good cause to believe [appellant's] proposed testimony would be deliberately untruthful," and that counsel had based this belief upon an independent investigation and prior discussions with appellant. 272 N.W.2d at 471. This factual determination is fairly supported by the record and is therefore presumptively correct. *See Sumner v. Mata*, 449 U.S. 539, 544, 101 S.Ct. 764, 767, 66 L.Ed.2d 722

(1980). For the purposes of our analysis, we presume that appellant would have testified falsely. We recognize, of course, that the criminal defendants' privilege to testify in their own defense does not include the right to commit perjury. *See Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971). However, the fact that appellant would have committed perjury does not mean that appellant has waived his right to a fair trial, due process or effective assistance of counsel. *Cf. Lowery v. Cardwell*, 575 F.2d at 730 (examination of defendant ceased abruptly and was followed by counsel's in camera motion to withdraw and refusal to state the reason for the motion; only rational conclusion to be drawn by judge as fact-finder was that defendant had testified falsely; held denial of due process). The "remedy" for appellant's perjury is prosecution for perjury.

■ Thus, in the present case defense counsel was confronted shortly before trial with appellant's intention to testify in his own defense in a manner that defense counsel had a firm factual basis for believing would be false. Counsel threatened appellant that he would withdraw from the case, advise the state court trial judge of appellant's intention, and testify against him as a rebuttal witness for the prosecution. Counsel's actions prevented appellant from testifying falsely. We hold that counsel's action deprived appellant of due process and effective assistance of counsel. As noted by the court in *Lowery v. Cardwell*, 575 F.2d at 731, "[w]e are acutely aware of the anomaly presented when mistrial must result from counsel's bona fide efforts to avoid professional irresponsibility. We find no escape, however, from the conclusion that fundamental requisites of fair trial have been irretrievably lost."

As recently noted by the Supreme Court in *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 2063, 2065, 80 L.Ed.2d 674 (1984) (citations omitted; emphasis added),

The Constitution guarantees a fair trial through the Due Process Clauses, but it

defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause .... Thus, a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding. The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the "ample opportunity to meet the case of the prosecution" to which they are entitled.

... The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.

....

Representation of a criminal defendant entails certain basic duties. *Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest.* From counsel's function as assistant to the defendant derive the overreaching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process.

Thus, the fair and effective operation of the adversary system depends upon the attorney who must zealously advocate the defendant's cause to judge and jury for determination. Counsel's ability to serve as an effective advocate, in turn, depends upon the defendant's ability to disclose information fully and in confidence to counsel. "When an attorney unnecessarily discloses the confidences of [the] client, [the attorney] creates a chilling effect which inhibits the mutual trust and independence necessary to effective representation." *United States ex rel. Wilcox v. Johnson,* 555 F.2d at 122.

In the present case counsel's actions in threatening to withdraw, advise the state trial judge and testify against appellant if appellant testified falsely, impermissibly compromised appellant's right to effective assistance of counsel. Despite counsel's legitimate ethical concerns, counsel's actions were inconsistent with the obligations of confidentiality and zealous advocacy. *See Lowery v. Cardwell,* 575 F.2d at 732 (Hufstedler, J., specially concurring). *See generally* Freedman, *Professional Responsibility of the Criminal Defense Lawyer: The Three Hardest Questions,* 64 Mich.L.Rev. at 1475–78. Counsel's actions, in particular the threat to testify against appellant, indicate that a conflict of interest had developed between counsel and appellant, even though this conflict was admittedly precipitated by appellant's intention to testify falsely. At this point counsel had become a potential adversary and ceased to serve as a zealous advocate of appellant's interests. "No matter how commendable may have been counsel's motives, [counsel's] interest in saving himself [or herself] from potential violation of the canons [or the ABA Model Rules of Professional Conduct] was adverse to [the] client, and the end product was [counsel's] abandonment of a diligent defense." *Lowery v. Cardwell,* 575 F.2d at 732 (Hufstedler, J., specially concurring).

Counsel's actions also impermissibly compromised appellant's right to testify in his own defense by conditioning continued representation by counsel and confidentiality upon appellant's restricted testimony. We hold that criminal defendants have the constitutional right to testify which, although not specifically expressed in the Constitution or the Bill of Rights, is implicit in the fifth and fourteenth amendments' due process guarantee of a fair adversarial process and in the sixth amend-

ment's guarantee of the right to meet and confront accusations, to be present and to present evidence and witnesses on one's behalf, including the right to present oneself as a witness. *See United States v. Bifield,* 702 F.2d 342, 349 (2d Cir.), *cert. denied,* — U.S. ——, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983); *Alicea v. Gagnon,* 675 F.2d 913, 923 (7th Cir.1982); *United States ex rel. Wilcox v. Johnson,* 555 F.2d at 118–19; *see also Wright v. Estelle,* 572 F.2d 1071, 1075–76 (5th Cir.) (Godbold, J., dissenting), *cert. denied,* 439 U.S. 1004, 99 S.Ct. 617, 58 L.Ed.2d 680 (1978). Counsel's actions improperly forced appellant in effect to choose between two constitutional rights, the right to testify in one's own defense and the right to effective assistance of counsel, and infringed both. *See United States ex rel. Wilcox v. Johnson,* 555 F.2d at 120–21.

The appropriate test for prejudice in ineffective assistance claims was clarified in *Strickland v. Washington,* 104 S.Ct. at 2068: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." However, the Court noted that "[i]n certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance." *Id.* at 2067, *citing United States v. Cronic,* — U.S. ——, 104 S.Ct. 2039, 2046–47 n. 25, 80 L.Ed.2d 657. The Court further noted that ineffective assistance of counsel claims that involved conflict of interest warranted "a similar, though more limited, presumption of prejudice.... Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and 'that an actual conflict of interest adversely affected his lawyer's performance.'" 104 S.Ct. at 2067, *citing Cuyler v. Sullivan,* 446 U.S. 335, 348, 350, 100 S.Ct. 1708, 1718, 1719, 64 L.Ed.2d 333 (1980) (footnote omitted).

■ Although *Cuyler v. Sullivan* involved an allegation of conflict of interest on the basis of multiple representation, we think that the same limited presumption of prejudice should apply to the conflict of interest between counsel and client involved in this case. Conflicts of interest necessarily implicate breach of counsel's duty of loyalty, which is "perhaps the most basic of counsel's duties." *Strickland v. Washington,* 104 S.Ct. at 2067. Here the breach of loyalty arose from counsel's threat to testify against appellant. Such threats undermine the fundamental trust between lawyer and client that can exist only if the lawyer "can convince the client that full and confidential disclosure ... will never result in prejudice to the client by any word or action of the lawyer." Freedman, *Professional Responsibility of the Criminal Defense Lawyer: The Three Hardest Questions,* 64 Mich.L.Rev. at 1473. Thus, threats like the one here are presumptively prejudicial to the defense.

We recognize the difficulties created when the duty to render effective assistance, imposed by the sixth and fourteenth amendments, is not completely congruent with the relevant code of professional ethics. We wish to stress that our task is not at all to determine whether counsel behaved in an ethical fashion. That question is governed solely by the Iowa Code of Professional Responsibility, as it was in effect at the time of the trial in this case, and as it has been authoritatively interpreted by the Supreme Court of Iowa. The Supreme Court of Iowa is the last word on all questions of state law, and the Code of Professional Responsibility is a species of state law. It nevertheless remains our duty to determine what the sixth amendment requires. In doing so, we are at liberty to consider, purely as guidelines and not as governing rules, the views of authorities on legal ethics, including views set forth in various proposed standards and codes of professional conduct. In this connection, we note that counsel here fell

short not only under the strict Freedman approach, but also under the ABA Proposed Defense Function Standards. Even the ABA Model Rules of Professional Conduct do not appear to sanction a threat by defense counsel actually to take the stand and to testify as a prosecution witness on rebuttal. Our holding is no broader than necessary to dispose of the perhaps unique fact situation presented here. In particular, we express no view on the sixth amendment implications of a lawyer's simply moving to withdraw, with or without informing the trial court of the reason. Surely a lawyer who actually testified against his own client could not be said to be rendering effective assistance. The same is true, we think, of a lawyer who threatens to testify against his own client.

■ Here, counsel went so far in his (at least initially) commendable zeal to avoid deceiving the court that he became an adversary to his own client. In this situation, we believe that appellant did not receive the effective assistance of counsel.

Accordingly, the judgment of the district court is reversed and the case is remanded to the district court with directions to grant the petition for writ of habeas corpus if the state does not begin new trial proceedings within a period to be determined by the district court.

### Appendix A

ABA Project on Standards for Criminal Justice: The Prosecution Function and the Defense Function, Proposed Defense Function Standard 4–7.7 (2d ed. 1980), provides:

(a) If the defendant has admitted to defense counsel facts which establish guilt and counsel's independent investigation established that the admissions are true but the defendant insists on the right to trial, counsel must strongly discourage the defendant against taking the witness stand to testify perjuriously.

(b) If, in advance of trial, the defendant insists that he or she will take the stand to testify perjuriously, the lawyer may withdraw from the case, if that is feasible, seeking leave of the court if

necessary, but the court should not be advised of the lawyer's reason for seeking to do so.

(c) If withdrawal from the case is not feasible or is not permitted by the court, or if the situation arises immediately preceding trial or during the trial and the defendant insists upon testifying perjuriously in his or her own behalf, it is unprofessional conduct for the lawyer to lend aid to the perjury or use the perjured testimony. Before the defendant takes the stand in these circumstances, the lawyer should make a record of the fact that the defendant is taking the stand against the advice of counsel in some appropriate manner without revealing the fact to the court. The lawyer may identify the witness as the defendant and may ask appropriate questions of the defendant when it is believed that the defendant's answers will not be perjurious. As to matters for which it is believed the defendant will offer perjurious testimony, the lawyer should seek to avoid direct examination of the defendant in the conventional manner; instead, the lawyer should ask the defendant if he or she wishes to make any additional statement concerning the case to the trier or triers of the facts. A lawyer may not later argue the defendant's known false version of facts to the jury as worthy of belief, and may not recite or rely upon the false testimony in his or her closing argument.

### Appendix B

ABA Model Rules of Professional Conduct 3.3 & comment (1983) provides:

(a) A lawyer shall not knowingly:

(1) make a false statement of material fact or law to a tribunal;

(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client

and not disclosed by opposing counsel; or

(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

(b) The duties stated in paragraph (a) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

(c) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

(d) In an *ex parte* proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.

Comment:

. . . .

*Perjury by a Criminal Defendant*

Whether an advocate for a criminally accused has the same duty of disclosure has been intensely debated. While it is agreed that the lawyer should seek to persuade the client to refrain from perjurious testimony, there has been dispute concerning the lawyer's duty when that persuasion fails. If the confrontation with the client occurs before trial, the lawyer ordinarily can withdraw. Withdrawal before trial may not be possible, however, either because trial is imminent, or because the confrontation with the client does not take place until the trial itself, or because no other counsel is available.

The most difficult situation, therefore, arises in a criminal case where the accused insists on testifying when the lawyer knows that the testimony is perjurious. The lawyer's effort to rectify the situation can increase the likelihood of the client's being convicted as well as opening the possibility of a prosecution for perjury. On the other hand, if the lawyer does not exercise control over the proof, the lawyer participates, although in a merely passive way, in deception of the court.

Three resolutions of this dilemma have been proposed. One is to permit the accused to testify by a narrative without guidance through the lawyer's questioning. This compromises both contending principles; it exempts the lawyer from the duty to disclose false evidence but subjects the client to an implicit disclosure of information imparted to counsel. Another suggested resolution, of relatively recent origin, is that the advocate be entirely excused from the duty to reveal perjury if the perjury is that of the client. This is a coherent solution but makes the advocate a knowing instrument of perjury.

The other resolution of the dilemma is that the lawyer must reveal the client's perjury if necessary to rectify the situation. A criminal accused has a right to the assistance of an advocate, a right to testify and a right of confidential communication with counsel. However, an accused should not have a right to assistance of counsel in committing perjury. Furthermore, an advocate has an obligation, not only in professional ethics but under the law as well, to avoid implication in the commission of perjury or other falsification of evidence. See Rule 1.2(d).

*Remedial Measures*

If perjured testimony or false evidence has been offered, the advocate's proper course ordinarily is to remonstrate with the client confidentially. If that fails, the advocate should seek to withdraw if that will remedy the situation. If withdrawal will not remedy the situation or is impossible, the advocate should make disclosure to the court. It is for the court then to determine what should be done—making a statement about the matter to the trier of fact, ordering a mistrial or perhaps nothing. If the false testimony was that of the client, the client may controvert the lawyer's version of their communication when the lawyer discloses the situation to the court. If there is

an issue whether the client has committed perjury, the lawyer cannot represent the client in resolution of the issue, and a mistrial may be unavoidable. An unscrupulous client might in this way attempt to produce a series of mistrials and thus escape prosecution. However, a second such encounter could be construed as a deliberate abuse of the right to counsel and as such a waiver of the right to further representation.

*Constitutional Requirements*

The general rule—that an advocate must disclose the existence of perjury with respect to a material fact, even that of a client—applies to defense counsel in criminal cases, as well as in other instances. However, the definition of the lawyer's ethical duty in such a situation may be qualified by constitutional provisions for due process and the right to counsel in criminal cases. In some jurisdictions these provisions have been construed to require that counsel present an accused as a witness if the accused wishes to testify, even if counsel knows the testimony will be false. The obligation of the advocate under these Rules is subordinate to such a constitutional requirement.

Model Rule 1.2(d), (e) provides:

(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

(e) When a lawyer knows that a client expects assistance not permitted by the rules of professional conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct.

Model Rule 1.6 provides:

(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).

(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:

(1) to prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm; or

(2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.