Emmanuel Charles
**WHITESIDE, Appellant,**

v.

**David SCURR, Warden, Appellee.**

No. 83–1015.

United States Court of Appeals,
Eighth Circuit.

Dec. 24, 1984.

---

John R. Gibson, Circuit Judge, dissented with opinion in which Ross, Fagg and Bowman, Circuit Judges, joined.

Fagg, Circuit Judge, dissented with opinion in which Ross, John R. Gibson, and Bowman, Circuit Judges, joined.

Lay, Chief Judge, concurred with opinion.

Before LAY, Chief Judge, HEANEY, BRIGHT, ROSS, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG and BOWMAN, Circuit Judges.

## ORDER

McMILLIAN, Circuit Judge.

The motion for rehearing en banc is denied. Contrary to the argument presented by the state in support of the motion for rehearing en banc, our opinion does not create a right to commit perjury. Our opinion expressly states that the criminal defendant's privilege to testify in his or her own defense does not include the right to commit perjury. Perjury is a most serious offense and anyone who commits perjury should be punished for it. Our holding is limited to the fact situation in the present case. We hold only that a lawyer who has a firm factual basis for believing that his or her client is about to commit perjury, because of confidential communications the client has made to the lawyer, may not disclose the content of those confidential communications to the trier of fact, in the present case the jury. The lawyer who discloses confidential communications or who threatens to do so has departed from the role of an advocate and has become an adversary to the interests of his or her client. Such a client has lost the effective assistance of counsel, a right to which even those defendants who may later be accused of perjury are entitled.

JOHN R. GIBSON, Circuit Judge, with whom ROSS, FAGG and BOWMAN, Circuit Judges, join, dissenting from denial of rehearing en banc.

The court has granted habeas relief to a petitioner whose only claim of prejudice is that his counsel required him to testify truthfully. The starkness and incongruence of the court's position are demonstrated by the following excerpts, which outline its holding:

[W]e presume that appellant would have testified falsely.

\*　　\*　　\*　　\*　　\*　　\*

\* \* \* Counsel threatened appellant that he would withdraw from the case, advise the state court trial judge of appellant's intention, and testify against him as a

rebuttal witness for the prosecution. Counsel's actions prevented appellant from testifying falsely. We hold that counsel's action deprived appellant of due process and effective assistance of counsel.

\*    \*    \*    \*    \*    \*

Counsel's actions also impermissibly compromised appellant's right to testify in his own defense by conditioning continued representation by counsel and confidentiality upon appellant's restricted testimony.

*Whiteside v. Scurr,* 744 F.2d 1323, 1328, 1329 (8th Cir.1984).

The court then proceeds to presume prejudice and in my view this is its most critical error. In *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court made clear that ineffective assistance claims must raise two components, deficient performance and prejudice. Failure to prove either element requires denial of relief. *Id.* at 2069–70. I join Judge Fagg in his views on the performance component but I write separately to underscore my concerns with the absence of prejudice, which is a sufficient ground to deny the writ.

It is true that *Strickland* describes a limited presumption where there is a conflict of interest. The court in its opinion recognizes the language of the *Strickland* test of prejudice but fails to apply it to the facts in this case. The court, quoting *Strickland,* states that prejudice must be presumed only if counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." 744 F.2d at 1330. A strong argument can be made that there is no actual conflict of interest. To say that there is a conflict requires that we recognize the right of Whiteside to testify falsely, while the Supreme Court has made plain that a criminal defendant has no right to commit perjury.

Assuming that there was a conflict, however, the record simply does not show that it adversely affected counsel's performance. The attorney's threat produced a single effect: it persuaded Whiteside to tell the truth as a witness. The case was tried and Whiteside testified, although, as the court observes on numerous occasions, his testimony was restricted in the sense that he was prevented from testifying falsely. The record reveals that Whiteside testified that he thought Love had a gun, which was precisely what he told his lawyer he would testify to, before he told his lawyer that he intended to testify that he saw something metallic in Love's hand just before the stabbing. I cannot justify the court's presuming that Whiteside was prejudiced when he testified fully in his defense and was restricted only in the sense that he did not testify falsely. Whiteside has not suggested that any other prejudice resulted from the threats of his counsel. The record reveals no other action during or before the trial that in any way demonstrates that counsel's performance was adversely affected by an actual conflict of interest. *Strickland* makes clear that it does not announce a per se presumption of prejudice in conflict of interest situations. In actuality, the court does apply such a per se rule to presume prejudice in this case.

Although it may not be applicable, *Strickland* lays down another test if there is no conflict: prejudice arises only if "but for counsel's errors, the result of the proceeding would have been different." 104 S.Ct. at 2068. The facts in this case make it unlikely that lying on the stand would have changed the outcome in Whiteside's trial. As the Iowa Supreme Court observed:

> There were three other persons in the room. No one testified to having seen a gun. A search of the apartment shortly after Love's death did not disclose one. \* \* \* [D]uring the argument Love told his girl friend to get his "piece"—meaning his gun. This refutes defendant's claim Love already had one.

*State v. Whiteside,* 272 N.W.2d 468, 471 (Iowa 1978). This evidence both demonstrates the strength of the case against Whiteside and impeaches his proposed false

testimony. Thus, we cannot conclude that the result of the trial would have been different. Whiteside has failed to demonstrate actual prejudice under the nonconflict standard.

The court makes much of the constraints on communication between lawyer and client because of counsel's threat. This concern is more theoretical than real, given that the threat occurred immediately before trial. Prior to this, there had been numerous conferences between lawyer and client, with the lawyer having full appreciation of the likely testimony from Whiteside. The fundamental trust between the lawyer and client was threatened more by Whiteside's decision to give perjured testimony, *after* a full and confidential disclosure of facts surrounding the case.

*Strickland* makes clear that the ultimate focus "must be on the fundamental fairness of the proceeding." 104 S.Ct. at 2069. Fundamental fairness cannot be stretched to encompass prejudice resulting from the absence of perjured testimony. *Strickland* also observes that a defendant is not entitled to the "luck of the lawless decisionmaker," *id.* at 2068, and its definition of prejudice cannot include an entitlement to receive the benefit of lawless or perjured testimony.

The court examines counsel's position primarily in terms of legal ethics. The Supreme Court of Iowa was more realistic in discussing not only the ethical considerations, but that a lawyer who knowingly uses perjured testimony or who aids a client's criminal act may be subject to prosecution for suborning perjury. *Whiteside,* 272 N.W.2d at 471. The majority does not discuss the proper course for the lawyer in the position faced by Whiteside's counsel, which presents an extremely complex question. We should not attempt to resolve this issue in separate opinions. Consideration of counsel's dilemma is further reason for rehearing en banc, particularly in view of the conflicting academic discussions of this question. *See Whiteside,* 744 F.2d at 1327. It is sufficient here, however, simply to conclude that Whiteside has not been prejudiced by being required to testify truthfully. The court should rehear this case en banc and on full reconsideration should deny the writ.

LAY, Chief Judge, concurring in the denial of a rehearing en banc.

I concur in the denial of a rehearing en banc, but write specially to address Judge Fagg's dissenting opinion. In characterizing the issue in this case as whether the insistence of defendant's counsel that the defendant testify truthfully denied the defendant effective assistance of counsel, Judge Fagg totally misreads the holding of *Whiteside v. Scurr,* 744 F.2d 1323 (8th Cir.1984). His dissent is certain to leave both lawyers and laypersons confused as to the breadth of the decision in this case.[1]

The panel opinion in *Whiteside* does not hold that the defendant was denied his constitutional rights because counsel demanded he testify truthfully. A lawyer must always insist that his or her client testify with veracity. As the panel opinion recognizes, such insistence neither creates a conflict of interest nor renders counsel ineffective. To suggest otherwise, sets up a straw-man, easily knocked down.

Ethical standards allow a lawyer to seek withdrawal when a client insists on giving testimony the lawyer knows to be perjurious. *See* American Bar Association, *Project on Standards for Criminal Justice: The Prosecution Function and the Defense Function,* Proposed Defense Function Standard 4–7.7 (2d ed. 1980).

---

1. The Des Moines Sunday Register published a distortional article titled "Iowa lawyers criticize ruling, say it encourages perjury by defendants" and describing the panel opinion as holding "that an Iowa man convicted of murder must be retried or set free because his attorney wouldn't let him commit perjury." Des Moines Sunday Register, Oct. 14, 1984, at 3B. Similar misinterpretation is demonstrated by the former Iowa Attorney General's characterization of the panel opinion as "outrageous," and the admonition of a Drake University Law School professor to "pay attention to the Code of Professional Responsibility for Lawyers' [sic]—and not be a party to perjury * * *." *Id.*

Counsel should not, however, advise the court of his or her reason for seeking withdrawal.[2] In this case, defendant's counsel threatened to take the stand and impeach his client. Such a threat is not only unethical, it creates a conflict of interest between the lawyer and the defendant rendering counsel ineffective in violation of defendant's sixth amendment rights.

This court's holding that a counsel's threat to testify against his or her client in a criminal case violates the defendant's constitutional rights does not lessen counsel's duty to avoid subornation of perjury. As the Ninth Circuit observed in *Lowery:*

> The problem presented is that which arises when defense counsel * * * forms the belief that his client's defense is based on false testimony. We start with the basic proposition that if, under these circumstances, counsel informs the fact finder of his belief he has, by that action, disabled the fact finder from judging the merits of the defendant's defense. Further, he has by his action openly placed himself in opposition to his client upon her defense. The consequences of such action on the part of counsel, in our judgment, are such as to deprive the defendant of a fair trial.

*Lowery*, 575 F.2d at 730. Judge Fagg's dissenting opinion broadens the holding in *Whiteside* far beyond its limits. That it is both unethical and a denial of effective assistance of counsel for an attorney to threaten to testify against the defendant client as to information given in confidence by the client is uncontestable. That a lawyer must serve as a guardian of truth in the judicial process is also without doubt. The panel opinion in *Whiteside* does no

more than tie these two certainties together.

FAGG, Circuit Judge, dissenting from denial of rehearing en banc, joined by ROSS, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

The panel opinion addresses an issue of significant constitutional dimension and of paramount concern to lawyers representing criminal defendants:

> Was Emmanuel Charles Whiteside denied effective assistance of counsel because his lawyer insisted that he testify truthfully in his own behalf?

I find it difficult to believe that a panel of this court would hold that a lawyer who makes use of a private dialogue with his client to dissuade the client from testifying falsely is burdened by a conflict of interest, is disloyal, is less than zealous, and is guilty of compromising the client's right to testify in his own defense. In arriving at this result, the panel has lost sight of the fact that "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984). Contrary to the panel's view, I have no difficulty in taking the position that a lawyer who insists upon truthful testimony is beyond reproach and his conduct is professionally reasonable. To hold otherwise is to foster "a breakdown in the adversarial process that our system counts on to produce just results." *Id.*

Whiteside has one fundamental complaint about his lawyer's performance: the lawyer insisted that Whiteside testify truthfully (that Whiteside thought his victim had a gun) while Whiteside wished to

---

2. I recognize that nonverbal acts may, in some circumstances, inform the court that the client is intending to give false testimony. In *Lowery v. Cardwell*, 575 F.2d 727 (9th Cir.1978), for example, counsel abruptly ceased questioning his client, the defendant, after she falsely denied shooting the victim in question. Counsel requested a recess, and made a motion in chambers to withdraw, but refused to state why he sought withdrawal. The motion was denied, and counsel continued his representation of the defendant. The attorney, however, did not argue

that the defendant had not shot the victim, instead he contended that the state's case was subject to reasonable doubt. The Ninth Circuit held that the attorney's acts "amounted to such an unequivocal announcement to the fact finder as to deprive appellant of due process." *Id.* at 730. Withdrawal before trial, or when feasible, without advising the trial judge of the particulars of the situation, normally will not constitute an "unequivocal announcement" depriving a defendant of his or her constitutional rights.

testify falsely (that he saw a gun in the victim's hand). Indeed, the panel acknowledges that Whiteside "would have testified falsely," and that the lawyer's actions "prevented [Whiteside] from testifying falsely." *Whiteside v. Scurr*, 744 F.2d 1323, 1328 (8th Cir.1984). Nevertheless, the panel concludes "that counsel's actions deprived [Whiteside] of due process and effective assistance of counsel." *Id.*

To prevent his client from committing perjury, Whiteside's lawyer told him "that if he insisted [on committing perjury], then he (counsel) would move to withdraw, advise the state trial judge that the testimony was perjurious and testify against him." *Id.* at 1326. Although this strongly worded admonition may have resulted in some degree of antagonism between Whiteside and his lawyer, I simply do not believe that a lawyer who, in the privacy of the lawyer-client relationship, admonishes his client to testify truthfully creates an actual conflict of interest. This conclusion is particularly compelling since a client has no constitutionally protected interest in testifying falsely. Furthermore, even if the actions of Whiteside's attorney created a conflict, the panel points to no evidence which suggests that the lawyer's dialogue adversely affected either his performance or the underlying lawyer-client relationship. *Strickland*, 104 S.Ct. at 2067.

In fact, it appears that Whiteside received the zealous, faithful representation of a lawyer who did his best to prepare and present his client's defense. Further, the lawyer did nothing to prevent Whiteside from testifying, but rather allowed Whiteside to testify fully and only insisted that his testimony be truthful. Since Whiteside's testimony was truthful and uninhibited, it is difficult to understand how the panel concludes that the lawyer's actions "compromised Whiteside's right to testify in his own defense," *Whiteside*, 744 F.2d at 1329, particularly in light of the panel's recognition that "criminal defendants' privilege to testify in their own defense does not include the right to commit perjury," *id.* at 1328 (citing *Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971)). In my view, the panel's holding is at odds with the principle espoused in *Harris*.

The lawyer's reaction to Whiteside's announced intention to give false testimony was undeniably strident. In my opinion, however, the panel analyzed the lawyer's strongly worded admonition from a theoretical viewpoint without taking into account what actually happened after the lawyer told Whiteside that he would not tolerate perjurious testimony. Further, the panel overlooked the practicalities of effective communication between the lawyer and his client. The lawyer's choice of words should not disturb us. Rather, what is important is that the lawyer effectively communicate with his client on a level the client can understand. In this case he did. As far as I can tell from reading the panel opinion and the trial transcript, the lawyer's threats had a singular impact on the trial—Whiteside did not tell a deliberate lie when he appeared on the witness stand.

I cannot accept the panel's conclusion that a lawyer, otherwise diligent and zealous in his representation, commits an "unprofessional error" solely because he insists that his client refrain from doing something the client has no constitutional right to do—commit perjury. In *Strickland*, the Supreme Court observed that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 104 S.Ct. at 2064. The panel opinion disregards the *Strickland* benchmark and totally ignores the lawyer's duty as an officer of the court to protect the integrity of our Nation's courts. False testimony on a crucial factual issue is not "evidence subject to adversarial testing" within the framework of a fair trial. *Id.* at 2063.

In affirming Whiteside's state court conviction, the Iowa Supreme Court stated:

> A defendant is entitled to present his defense and to an opportunity to testify fully and freely concerning any defensive matter. However, he has no right to commit perjury nor is an attorney permitted—much less required—to aid in such a purpose. Counsel owes a client charged with a crime honest, loyal, and faithful representation. However, this duty extends only to the use of fair and honorable means. A lawyer may never assist in the perpetration of a crime or countenance any other dishonest act.

*State v. Whiteside*, 272 N.W.2d 468, 470 (Iowa 1978). This pronouncement has a virtue. Criminal defense lawyers are told where they stand and assured that they can proceed with confidence to purge the deliberate lie from the trial record. This court should not shirk its obligation to provide the same affirmative guidance.

I find it hard to believe that a lawyer who nips perjury in the bud is "ineffective" within the context of the constitutional fabric. Rather, I believe the proper view is the one taken by the Seventh Circuit in the case of *United States v. Curtis*, 742 F.2d 1070 (7th Cir.1984), in which that court concluded that a lawyer's refusal to allow his client to take the witness stand and commit perjury did not constitute ineffective assistance. *Id.* at 1076.

Hence, I note with dismay that the court has denied the petition for rehearing en banc.