STATE of Wisconsin, Plaintiff-Respondent,

v.

James A. FRITZ, Jr., Defendant-Appellant.

Court of Appeals

*No. 96–1905–CR. Submitted on briefs June 3, 1997.—Decided July 8, 1997.*

(Also reported in 569 N.W.2d 48.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William J. Tyroler*, first assistant state public defender, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney

general, and *David J. Becker*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

FINE, J. James A. Fritz, Jr., appeals from a judgment entered on guilty verdicts convicting him of second-degree sexual assault of a child, *see* § 948.02(2), STATS., and second-degree sexual assault, *see* § 940.225(2)(b), STATS., and from the trial court's order denying his motion for postconviction relief contending that he received ineffective assistance of counsel.[1] We reverse and remand for further proceedings consistent with this opinion.

## I.

According to the criminal complaint, this case was set into motion when eighteen-year-old Michelle F. complained to authorities that more than two years earlier, in January of 1993, Fritz forced her to have sex and gave her chlamydia, a sexually transmitted disease. At the time of the alleged assault, Michelle F. was several weeks shy of her sixteenth birthday and Fritz was not quite twenty.

While represented by retained counsel, Fritz and the Milwaukee County District Attorney plea-bargained the case. Under the plea bargain, which was reduced to writing in a letter dated May 30, 1995, the prosecutor offered the following:

> I will issue one count of Second Degree Sexual Assault of a Child. I will not issue an additional count of First Degree Sexual Assault related to the

---

[1] The judgment erroneously characterizes the conviction as being for two counts of second-degree sexual assault of a child.

transmitting of the chlamydia resulting in great bodily harm if your client enters a guilty plea to the issued count. . . .

I would recommend a stayed prison sentence, and probation. I would ask that as a condition of his probation, Mr. Fritz be required to serve some amount of time at the House of Correction, but would leave the amount up to the court.[2]

Although Fritz contended that the sex between him and Michelle F. was consensual, and that he should not be forced to plead guilty to a felony, he agreed to accept the plea bargain as, according to the postconviction-hearing testimony of his retained counsel, "the best route to take."[3] The retained lawyer testified at the postconviction hearing that he did not believe that Fritz had a "triable case" because Fritz had admitted to having sex with Michelle F., and, accordingly, "there was no defense that could be proffered at trial unless Mr. Fritz were to lie concerning the statements which he had made, the admissions which he had made."

In order to save money, Fritz then ended the services of his retained counsel, whose bills were being

---

[2] The offer also included the prosecutor's pledge not to "pursue[ ]" charges relating to an unspecified "other victim," a requirement that Fritz have no contact with Michelle F., and a requirement that he undergo an alcohol or drug assessment evaluation.

[3] Fritz's contention that the sex was consensual was supported by the results of a polygraph examination given by an investigator with the Milwaukee County District Attorney's office. The prosecutor's letter offering the plea bargain indicated that the polygraph results "confirm most of my original information," but also noted that whether the sexual intercourse was or was not consensual was not relevant because Michelle F. was fifteen-years old at the time.

paid by Fritz's father, and received legal representation by the State Public Defender's appointment of a private lawyer, William Pulkinen. Although, consistent with the plea bargain, Fritz waived his right to a preliminary examination, he did not enter a guilty plea, and, as a consequence, the prosecutor upped-the-ante by filing an amended Information that added a second-degree-sexual-assault count. This new count alleged the transmission of chlamydia from Fritz to Michelle F. The case went to trial, Fritz testified and denied having sexual intercourse with Michelle F., and, as noted above, he was convicted on both counts. The trial court sentenced Fritz to two concurrent seven-year periods of incarceration.

At the postconviction hearing on his ineffective-assistance-of-counsel claim, Fritz testified that he told Pulkinen that he had sex with Michelle F. Pulkinen testified that although Fritz told him that he and Michelle F. had sexual relations, it was before the date alleged in the criminal complaint. Pulkinen admitted advising Fritz that it would be Fritz's word against Michelle F.'s word at any trial, and that he could not be found guilty unless the prosecution persuaded all twelve jurors of his guilt beyond a reasonable doubt. Fritz testified that he interpreted this as "implying for me to lie on the witness stand." Fritz also testified at the postconviction hearing that he would have taken the plea bargain if Pulkinen had not given him bad advice—telling him, according to Fritz's testimony, that he had nothing to lose by going to trial because he would get probation in any event.

In its written decision denying Fritz's postconviction motion, the trial court noted that Fritz lied during the trial, and also lied to the person who prepared the pre-sentence report by again denying that he had sex

with Michelle F. The trial court concluded that Fritz's "credibility" was thus "questionable." Nevertheless, the trial court also found that parts of Fritz's testimony were corroborated by his wife and by his mother and father.[4] Specifically, the trial court recounted that Fritz's wife testified that Fritz would have taken the plea bargain but for Pulkinen's advice, and that Fritz's parents testified that they heard Pulkinen tell Fritz that, essentially, he had nothing to lose by going to trial.

The trial court found Pulkinen to be not credible, concluding that he "bobbed and weaved on the important issue of whether Fritz ever admitted to him directly that he had sex with Michelle." Moreover, the trial court believed testimony by Fritz's retained counsel that Pulkinen had never contacted him to find out about the case, and that Pulkinen's testimony to the contrary was not true: "Pulkinen was obviously making up the [conversation with Fritz's retained counsel] as he was going along, depending upon what he thought would reflect most favorably on him at any given moment." Significantly, the trial court determined that Pulkinen's "time sheets contained no evidence of any contact with" Fritz's retained counsel. Thus, the trial court found that although Pulkinen's testimony "contradicted, in part, the Fritz family's testimony," "Pulkinen repeatedly contradicted himself": "He was evasive, vague, non-responsive and changeable about almost every subject pertinent to this inquiry. His manner was disorganized and forgetful at times, and at others very apparently calculated." After an extensive review of Pulkinen's testimony, the trial court concluded that it was "completely untrustworthy": "He is

---

[4] Fritz married after the incidents alleged in the complaint.

lying, because he knows that the truth has serious professional implications for his license to practice law."[5]

After weighing the credibility of the witnesses who testified at the postconviction hearing, the trial court reached a chilling conclusion—that an attorney licensed to practice law in this state advised a client to lie on the witness stand:

> I conclude, therefore, based upon the entirety of this record, that Fritz did indeed discuss with Pulkinen the fact that he had sex with the victim in this case. I further conclude that Pulkinen and Fritz, secure in the assumption that Fritz's polygraph admissions would not be admissible, decided that there was nothing to lose in taking the case to trial based upon a fraudulent defense, and that is what in fact occurred. I conclude that Pulkinen's representation of his client in this regard—his advice that the case could be tried based upon "his word against hers" when Pulkinen knew that his client's "word" would be a lie — was grossly unethical and constituted deficient performance within the meaning of the

---

[5] The trial court found that Pulkinen's denial of having discussed with Fritz prior to the trial whether Fritz had, in fact, had sex with Michelle F. was "implausible":

> I cannot believe that any attorney would proffer a defense to a sexual assault case based upon "his word against hers" without asking his client what "his word" was. I cannot believe that any attorney, faced with polygraph admissions such as those at issue here, would not have questioned his client very directly about those admissions. Pulkinen's position that he never questioned his client about the basic facts of the case—a position arrived at after much meandering on the record—is simply, under these circumstances, unworthy of belief. He is lying, because he knows that the truth has serious professional implications for his license to practice law.

Sixth Amendment. *See*, SCR 20:3.3, Candor Toward the Tribunal.[6]

Nevertheless, the trial court concluded that Fritz had not established the requisite prejudice:

> In *State v. Vinson*, 183 Wis. 2d 297, 305, 515 N.W.2d 314 (Ct. App. 1994) (citation omitted), the court elaborated on the test for prejudice in claims of ineffective assistance of counsel: "The bottom line test is whether the alleged ineffectiveness 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" In this case, Pulkinen's ineffectiveness could be said to have "undermined the functioning of the adversarial process" and produced an "unjust result" only if Fritz had been *acquitted*. Under those circumstances, of course, the State would have no recourse and the injustice would remain wholly unredressed. Fritz has been convicted *despite* the fact that he and his lawyer combined to commit a fraud on the court. The truth has prevailed, the result of the proceeding is completely reliable and justice has been done. That Fritz's dishonest tendencies might have been

---

[6] The trial court also found that Pulkinen misrepresented to both the court and to opposing counsel the criminal records of Fritz and his wife:

> Pulkinen's file reflects that he knew that Fritz had previously been convicted of two crimes, and Fritz's wife, Rosie, a defense witness, had told him that she had previously been convicted of one. Yet when the criminal records of witnesses was discussed on the record at several points prior to jury selection, Pulkinen never fulfilled his duty as an officer of the court to supply that information to the court when it became clear that the prosecutor didn't have it. *See*, SCR 20:3.3 [,] Candor Toward the Tribunal; SCR 20:3.4[,] Fairness to Opposing Party and Counsel. (Rosie Fritz testified that Pulkinen told her "what they don't know won't hurt.")

(Citations to the record omitted.)

controlled by an ethical lawyer has not been estab-
lished and, in any event, is not dispositive. Fritz
cannot undo what he has done to himself by blam-
ing it on the concededly unprofessional conduct of
his lawyer. The lawyer's dishonesty does not trump
the client's such that the client should be rewarded
for his own transgressions with a new trial, or, in
this instance, the benefit of a plea bargain.
Pulkinen should answer for his own sins, but in a
different forum. Fritz's present situation is his own
fault, and he will have to bear the consequences of
it. He has failed to prove the prejudice prong of the
analysis.

(Emphasis in original.) Although we agree with the
sentiments expressed by the trial court, the over-
whelming weight of legal authority is unfortunately, as
the State recognizes, to the contrary.

## II.

 Every criminal defendant has a Sixth Amendment
right to the effective assistance of counsel, *Strickland
v. Washington*, 466 U.S. 668, 686 (1984), and a cotermi-
nous right under Article I, § 7 of the Wisconsin
Constitution, *State v. Sanchez*, 201 Wis. 2d 219,
226–236, 548 N.W.2d 69, 72–76 (1996). In order to
establish violation of this fundamental right, a defen-
dant must prove two things: (1) that his or her lawyer's
performance was deficient, and, if so, (2) that "the defi-
cient performance prejudiced the defense." *Strickland*,
466 U.S. at 687; *see also Sanchez*, 201 Wis. 2d at 236,
548 N.W.2d at 76. A lawyer's performance is not defi-
cient unless he or she "made errors so serious that
counsel was not functioning as the 'counsel' guaranteed
the defendant by the Sixth Amendment." *Strickland*,

466 U.S. at 687. The defendant must also prove prejudice: " 'The defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Sanchez*, 201 Wis. 2d at 236, 548 N.W.2d at 76 (quoting *Strickland*, 466 U.S. at 694).

The effective-assistance-of-counsel right applies to advice as to whether a defendant should accept or reject a plea bargain, *State v. Ludwig*, 124 Wis. 2d 600, 608–612, 369 N.W.2d 722, 725–728 (1985); *Toro v. Fairman*, 940 F.2d 1065, 1067 (7th Cir. 1991); *Turner v. Tennessee*, 858 F.2d 1201, 1205 (6th Cir. 1988) (citing cases), *vacated on other grounds*, 492 U.S. 902 (1989); those enmeshed in the gears of the criminal justice system need advice and guidance—not only in the selection and execution of trial strategies but also in the decision of whether to forego a trial by pleading guilty (or one of its many variants). We agree with the trial court that a lawyer who counsels perjury as a way of beating a "he says-she says" charge is "not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *See Strickland*, 466 U.S. at 687; *cf. Nix v. Whiteside*, 475 U.S. 157, 166–171 (1986) (lawyer may not either encourage or tolerate client's perjury). Moreover, although we do not condone what appears to be Fritz's perjury at trial, *see* § 946.31, STATS., and we encourage the State to investigate whether Fritz and Pulkinen should be charged criminally as a result of Fritz's trial testimony and Pulkinen's testimony at the postconviction hearing, the simple fact is that persons hire lawyers to guide them through the legal system's shoals: a "defendant can be expected to rely on coun-

sel's independent evaluation of the charges, applicable law, and evidence, and of the risks and probable outcome of trial." *In re Alvernaz*, 830 P.2d 747, 753 (Cal. 1992); *see also Ludwig*, 124 Wis. 2d at 610, 369 N.W.2d at 727 (a defendant has "substantial dependence upon her attorney to inform her of what she needs to know"). This is what Fritz did.

Although we are sympathetic with the trial court's comment that "Fritz cannot undo what he has done to himself by blaming it on the concededly unprofessional conduct of his lawyer," we cannot say categorically that a defendant unschooled in the law and the ethical responsibilities that, in theory at least, infuse our legal system is estopped from seeking redress when he or she follows a lawyer's unethical advice. History and popular culture teaches all too often that the legal system may be manipulated to accomplish a desired result. Significantly, it took a decision of the United States Supreme Court to declare what in an ideal world would be self-evident—that a criminal defense lawyer who refused to tolerate perjury by his client was not guilty of constitutionally deficient performance. *Whiteside*, 475 U.S. at 171–175. Indeed, the United States Court of Appeals for the Eighth Circuit ruled in a unanimous decision that the actions of Whiteside's trial lawyer in preventing Whiteside from committing perjury "deprived [Whiteside] of due process and effective assistance of counsel." *Whiteside v. Scurr*, 744 F.2d 1323, 1328 (8th Cir. 1984), *rev'd*, 475 U.S. 157 (1986); *see also Whiteside v. Scurr*, 750 F.2d 713 (8th Cir. 1984) (denying motion for rehearing *en banc*).

We do not think it appropriate to hold Fritz to a higher standard of discernment than that shown by the Eighth Circuit in analyzing the competing legal inter-

294

ests discussed in the *Whiteside* decisions, or to know in the absolute that a defendant in a criminal case has no right to testify falsely. *See Harris v. New York*, 401 U.S. 222, 225 (1971) (defendant has no right to testify falsely). Indeed, we note that there is at least one circumstance where the law of this state approves of a witness knowingly testifying falsely. RULE 906.09(1), STATS., permits an attack on a witness's credibility by evidence "that the witness has been convicted of a crime." Not all of a witness's prior convictions, however, are admissible for this purpose. RULE 906.09(2), STATS. The trial court must first hold a hearing to determine which prior convictions are admissible and which are not. RULE 906.09(3), STATS. Once that decision is made, the witness may be asked only two questions: "The examiner may ask the witness if he has ever been convicted of a crime and if so how many times." *State v. Rutchik*, 116 Wis. 2d 61, 76, 341 N.W.2d 639, 646 (1984). Thus, for example, if a trial court determines that only two of a witness's three prior convictions are admissible, the witness is instructed to answer the questions: "yes" and "two," even though "three" is the factually correct answer. Additionally, if the trial court excludes all of a witness's convictions from the purview of RULE 906.09, the witness is instructed to answer "no" to the question "Have you ever been convicted of a crime?" even though this is not true. One commentator has described the process:

> Once the trial judge determines the number of convictions which can be used to impeach the witness, the judge should then instruct the witness and the parties about the permissible limits of the impeachment. Wisconsin law permits exactly two questions before the jury on this subject:
> "Have you ever been convicted of a crime?"

"If so, how many times?"

The judge should instruct the witness how to answer these questions based on the determination of the number of convictions that will be allowed for impeachment. To put it another way, *the judge should tell the witness exactly how to answer these questions in order to forestall further inquiry into the prior crimes before the jury.* For instance, if the witness has six (6) prior convictions but the judge decides to allow the use of only four (4), *the witness should be instructed to answer "yes" and "4" (or words to that effect) when answering the two inquiries.*

7 WISCONSIN PRACTICE—Daniel D. Blinka EVIDENCE § 609.1 at 312–313 (1991) (emphasis added). The distinctions between these scenarios and the advice given to Fritz by Pulkinen may not be as clear to some as they are to others. *Cf. State v. J.L.T., Jr.,* 149 Wis. 2d 548, 550, 439 N.W.2d 829, 831 (Ct. App. 1989) ("[T]he integrity of the judicial process is compromised when a witness under oath is authorized, even instructed, to give answers that are untruthful.") (criticizing trial court's instruction to mother in paternity action to testify that she had sexual relations only with J.L.T. during the conceptive period even though there were three others, because all but J.L.T. were excluded by a blood test as possible fathers).

Although the focus of the "prejudice" aspect of *Strickland* and its progeny is "on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair," *Lockhart v. Fretwell,* 506 U.S. 364, 372 (1993), a defendant who claims that he or she would have accepted a plea bargain if the trial lawyer had not been

constitutionally deficient is not foreclosed from showing prejudice by the fact that he or she has had a fair trial, *United States v. Blaylock*, 20 F.3d 1458, 1466 (9th Cir. 1994). The defendant must show, however, that he or she would have in fact accepted the plea bargain but for the lawyer's deficient performance. *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995). Additionally, under the law in most jurisdictions, the defendant must demonstrate that "the plea bargain agreement would have resulted in a lesser sentence." *Ibid.* (citing cases). In connection with this latter requirement, however, the Wisconsin Supreme Court has held that a retrospective attempt to analyze whether a defendant would have received a different sentence but for a prosecutor's unobjected-to breach of a plea bargain is not possible because it "would necessarily involve speculation and calculation," and testimony by the trial judge who imposed sentence "would be inappropriate, and irrelevant." *State v. Smith*, 207 Wis. 2d 259, 281, 558 N.W.2d 379, 389 (1997) (establishing a *per se* rule of prejudice where a trial lawyer does not object to the prosecution's breach of a plea bargain). This, we believe, trumps the requirement that a defendant demonstrate that "the plea bargain agreement would have resulted in a lesser sentence." *See Engelen*, 68 F.3d at 241. Moreover, under the facts of this case, the second count was added *only* because Fritz rejected the plea bargain and opted to go to trial. A second felony conviction is "prejudice" irrespective of whether the actual time served would have been less under an accepted plea-bargained guilty plea. Accordingly, inasmuch as it is not seriously disputed on this record but that Fritz rejected the plea bargain negotiated by his retained counsel because of

Pulkinen's involvement, Fritz has made a sufficient showing to overturn his conviction.

■

As a remedy, Fritz seeks reinstatement of the original plea bargain. *See Blaylock*, 20 F.3d at 1468 (where counsel did not inform defendant of proposed plea bargain, the remedy "ordinarily will involve reinstating the original offer" subject to "intervening circumstances" that have "changed the factual premises" of the original offer).[7] But such a request poses a "brook too broad for leaping." *See* A. E. HOUSMAN, A SHROPSHIRE LAD, canto 54 (1932). As the trial court pointed out, Fritz's posture here is not without blemish. It may very well be that the State will determine that under all the facts and circumstances of this case reinstatement of the original offer is not appropriate. It is entitled to make that assessment, subject to appropriate protections. *See State v. Braunsdorf*, 98 Wis. 2d 569, 572–574, 297 N.W.2d 808, 810–811 (1980) (prosecutors in Wisconsin have considerable, although not unfettered, discretion in the initiation and handling of criminal cases); *State v. Windom*, 169 Wis. 2d 341, 350–352, 485 N.W.2d 832, 835–836 (Ct. App. 1992) (changed circumstances can relieve State of obligation under plea bargain); *see also Alabama v. Smith*, 490 U.S. 794, 798–803 (1989) (discussing whether defendants may be penalized following successful appeal if convicted after remand); *Alvernaz*, 830 P.2d at 757 (there is ordi-

[7] This distinguishes this case from *State v. Ludwig*, 124 Wis. 2d 600, 369 N.W.2d 722 (1985), where a new trial was ordered in the wake of a determination that the defendant was not informed of a proposed plea bargain; the defendant in *Ludwig* apparently sought a new trial. *Id.*, 124 Wis. 2d at 602–603, 369 N.W.2d at 723. In any event, *Ludwig* neither held nor implied that a new trial was the only remedy upon remand.

narily no presumption of constitutionally impermissible vindictiveness following a prosecutor's failure to reinstate a plea bargain offer). Accordingly, we reverse the judgment of conviction and remand to the trial court with instructions that the case be restored to its posture as of June 9, 1995, when the criminal complaint charging Fritz with one count of second-degree sexual assault of a child was filed. We also request that the Clerk of the Court of Appeals forward a copy of the trial court's written decision and a copy of this opinion to the Milwaukee County District Attorney and to the Board of Attorneys Professional Responsibility. *See* SCR 60.04(3)(b).

*By the Court.*—Judgment and order reversed, and cause remanded with instructions.