**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DENNIS CHEMIL HARRIS | : | |
| | : | |
| Appellant | : | No. 1174 MDA 2017 |

Appeal from the Judgment of Sentence June 27, 2017
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0002994-2016,
CP-67-CR-0006791-2015

BEFORE:   PANELLA, J., OTT, J., and PLATT[*], J.

MEMORANDUM BY OTT, J.:                    **FILED OCTOBER 01, 2018**

Dennis Chemil Harris appeals from the judgment of sentence entered in the Court of Common Pleas of York County at docket number CP-67-CR-0006791-2015 ("No. 6791-15"), following his jury trial convictions for two counts of robbery and one count each of theft, receiving stolen property, and conspiracy.[1]   Harris additionally appeals from the judgment of sentence entered in the Court of Common Pleas of York County at docket number CP-67-CR-0002994-2016 ("No. 2994-16"), following his jury trial convictions for three counts each of robbery and terroristic threats and one count each of

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1]  18 Pa.C.S. §§ 3701(a)(1), 3921(a), 3925(a), and 903, respectively.

theft, receiving stolen property, and simple assault.[2]  After careful review, we vacate the judgments of sentence, and remand for new trials.

In its opinion, the trial court set forth the relevant facts and procedural history of these cases.  Counsel was appointed to represent Harris in both actions; following Harris's request and prior to either trial, new counsel was appointed.  Trial Court Opinion, 1/12/2018, at 14-15.

At the beginning of a pretrial conference on August 18, 2016, the second appointed counsel informed the trial court that Harris had requested that he withdraw.  N.T., 8/18/2016, at 2.  After the trial court asked Harris about his reasons for wanting his second appointed trial counsel removed, the following exchange occurred:

> [HARRIS]:  Well, he doesn't seem to have my best interest at heart in representing me.
>
> THE COURT:     He's your second attorney.  Did you feel the same way about your first attorney?
>
> [HARRIS]:  Of course.
>
> THE COURT:     And of course you are going to feel the same way about your fourth, fifth?
>
> [HARRIS]:  Depends what they say to me when we come to have a conversation.

*Id.* at 3.  After the second appointed trial counsel stated he had nothing to add, *id.* at 4, the trial court again addressed Harris:

---

[2]  18 Pa.C.S. §§ 3701(a)(1), 2706(a)(1), 3921(a), 3925(a), and 2701(a)(3), respectively.

> THE COURT: Well, sir, are you ready to proceed to trial? Because we're listing your case for the November trial term.
>
> [HARRIS]: Right. Am I ready to proceed?
>
> THE COURT: It seems every time we come to court you have another reason to delay it. And I'm done delaying it. So we're going to represent –
>
> [HARRIS]: Sure. If that's what I have to do.

*Id.* at 5. After the trial court inquired as to the anticipated length of these trials, both the prosecutor and defense counsel estimated that the trials would last two to four days. *Id.*

Pursuant to Harris's request, the second appointed counsel was removed, *id.* at 7; however, the trial court never informed Harris that it would not appoint a third attorney or that he would have to proceed *pro se*. *See generally id.*

When No. 6791-15 was called to trial, Harris complained that he was "not prepared" and requested that the trial court either give him additional time to obtain private counsel or appoint a third attorney for him. N.T. Trial (No. 6791-15), 5/15-17/2017, at 3-4. He indicated he had spoken to a private attorney but needed additional time to secure his representation. *See id.* When the trial court informed Harris that it planned to proceed with trial, Harris requested to be taken to the hospital, because he was "having breathing problems." *Id.* at 30. The trial court allowed him to be taken to York Hospital, where he was examined and discharged that same day. *Id.* at 30, 55, 58-59, 227. Upon returning to the courtroom, Harris alleged that he was experiencing chest pains and asked to be transported back to York Hospital,

which the trial court again permitted. The hospital released Harris about an hour later. The next two days, Harris refused to leave York County Prison, and his trial at No. 6791-15 was held *in absentia*.

After Harris was convicted of the charges at No. 6791-15, he sent a letter to the trial court requesting that counsel be appointed for his appeal at No. 6791-15 and for his trial at No. 2994-16. Letter from Harris to the Hon. Maria Musti Cook (May 24, 2017).

The trial at No. 2994-16 was scheduled to commence on May 22, 2015, but the Commonwealth informed the trial court that Harris refused to leave his cell at York County Prison. N.T. Trial (No. 2994-16), 5/22-25/2017, at 4. The next day, a deputy[3] testified as follows:

> We went to the jail this morning and I asked the guards in the front to call back and ask [for Harris] to come up. They said he originally wasn't going to come to court. . . . [S]o they called back again and then . . . he said he was going to come to court, and then we waited there a little bit, and then he decided that he was not going to come to court again.

*Id.* at 82. Consequently, once again, Harris was tried in *absentia* and a jury found him guilty of all charges.

On June 27, 2017, Harris was sentenced to seven to 14 years of confinement at No. 6791-15, and to a consecutive seven years and six months to 15 years of confinement at No. 2994-16, for an aggregate sentence of 14 years and six months to 29 years of confinement. At the conclusion of his

---

[3] The deputy's name was not identified in the notes of testimony. *See* N.T. Trial (No. 2994-16), 5/22-25/2017, at 82.

sentencing hearing, the trial court ordered counsel appointed to represent Harris on appeal. N.T., 6/27/2017, at 9. The trial court confirmed this appointment in a written order dated June 28, 2017, and entered on the docket on June 30, 2017.[4] On July 26, 2017, Harris's newly appointed counsel filed a notice of appeal.[5, 6]

Harris raises the following issues on appeal:

_____

[4] On July 3, 2017, Harris filed a *pro se* notice of appeal, listing both docket numbers. Nevertheless, a *pro se* notice of appeal filed by a defendant who is represented by counsel is merely considered a premature filing, perfected by the later counseled notice of appeal and does not affect the validity of the counseled notice of appeal. **See Commonwealth v. Cooper**, 27 A.3d 994, 1001, 1007 n.19 (Pa. 2011); **see also Commonwealth v. Ellis**, 626 A.2d 1137, 1138 (Pa. 1993) (there is no right of self-representation together with counseled representation – *i.e.*, hybrid representation – at all levels).

[5] Appellate counsel filed one notice of appeal listing both docket numbers. On June 1, 2018, the Pennsylvania Supreme Court, in **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), held that such a practice violates Pennsylvania Rule of Appellate Procedure 341(a), and the failure to file separate notices of appeal for separate dockets will result in quashal of the appeal. **See id.** at 977. However, the Court announced its holding was prospective only, and therefore, we need not quash the present appeal which was pending at the time **Walker** was filed. **See id.** at 971. Nevertheless, we note that the notice of appeal also includes an incorrect docket number. Indeed, while the Notice purports to appeal from Docket No. "CP-67-CR-0006791-201**6**," Harris's case number is Docket No. "CP-67-CR-0006791-201**5**." However, neither the Commonwealth nor the trial court have objected to this error, and it is clear from our review that the mistake was purely typographical. Accordingly, we decline to quash on that basis as well.

[6] On July 27, 2017, the trial court ordered Harris to file concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) for both dockets within twenty-one days of the date of the order. After Harris requested and was granted an extension of time, he filed a timely concise statement on October 26, 2017.

[1.] Whether the [t]rial [c]ourt abused its discretion by refusing to appoint counsel at the time of trial?

[2.] Whether the trial court abused its discretion by proceeding with a trial in absentia?

[3.] Whether the Commonwealth presented sufficient evidence to sustain the trier of fact's verdict of guilty as to all charges?

Harris's Brief at 4 (issues re-ordered to facilitate disposition).

Harris first contends that he "was deprived of counsel at the most crucial time and in contravention of Constitutional guarantees." *Id.* at 19.

"A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." *Commonwealth v. Tejada*, 161 A.3d 313, 317 (Pa. Super. 2017) (citation omitted).

After having refused two previously appointed attorneys, on the day that his trial in No. 6791-15 was scheduled to begin, Harris requested additional time to obtain private counsel or for the trial court to appoint a third trial counsel. N.T. Trial (No. 6791-15), 5/15-17/2017, at 3-4. A "presumption" exists "in favor of the defendant's counsel of choice[.]" *Commonwealth v. Hlatky*, 626 A.2d 575, 579 (Pa. Super. 1993). The Supreme Court of Pennsylvania has addressed how much leeway a defendant asking for time to hire private counsel may be given:

> Where a defendant knowingly and intelligently refuses appointed counsel while insisting on privately retained counsel without taking steps to secure such private counsel, the defendant must be prepared to accept the consequences of his or her choice.

> Therefore, . . . respondent forfeited his right to counsel.

- 6 -

***Commonwealth v. Travillion***, 17 A.3d 1247, 1248 (Pa. 2011) (citation omitted). Nevertheless, before the right to counsel can be forfeited, a defendant must be personally warned by the trial court that he needs to retain counsel and have counsel enter an appearance by a specific date. ***See Commonwealth v. Prysock***, 972 A.2d 539, 544-545 (Pa. Super. 2009) ("trial court abused its discretion when it denied Appellant's requests for a continuance so that he might proceed with retained counsel of his choice[,]" due in part to the fact that appellant was never "personally warned that he needed to retain counsel by a specific date or that no further continuances would be granted"), *citing* ***Commonwealth v. Patterson***, 931 A.2d 710, 713 (Pa. Super. 2007) (defendant who seeks to retain private counsel must "receive proper notice of the date by which counsel must enter his appearance"). It is reversible error to deny a defendant's request for a continuance to obtain counsel of choice without first determining how long a continuance is needed. ***See Commonwealth v. Wolfe***, 447 A.2d 305, 311 (Pa. Super. 1982) (new trial granted where "no inquiry was made as to the probable length of time needed for the defendant to reappear with private counsel").

As for Harris's request for a third appointed trial counsel, we recognize that "while an indigent defendant is entitled to counsel, 'the right to appointed counsel does not include the right to counsel of the defendant's choice.'" ***Commonwealth v. Tighe***, 184 A.3d 560, 576 (Pa. Super. 2018), *quoting* ***Commonwealth v. Albrecht***, 720 A.2d 693, 709 (Pa. 1998).

Furthermore, the trial court did not inquire into whether Harris was waiving his right to counsel by refusing his two appointed trial attorneys. *See generally* N.T., 8/18/2016; N.T. Trial (No. 6791-15), 5/15-17/2017; N.T. Trial (No. 2994-16), 5/22-25/2017. Pennsylvania Rule of Criminal Procedure 121 controls waiver of counsel and requires a trial court to elicit specific information from a defendant to ensure the defendant's waiver of his right to counsel is "knowing, voluntary, and intelligent." Pa.R.Crim.P. 121(A)(2). The Rule further states that, when a court accepts a defendant's waiver of counsel, "standby counsel may be appointed for the defendant" to "attend the proceedings and . . . be available . . . for consultation and advice." Pa.R.Crim.P. 121(D).

On the question of standby counsel, the Supreme Court of Pennsylvania has concluded:

> Although neither the United States Supreme Court nor our Rules of Criminal Procedure mandate the appointment of standby counsel, a comment to Rule 121 suggests the advisability of appointing standby counsel to attend the proceedings and be available to the defendant for consultation and advice when the defendant has waived his right to counsel for a trial, especially in long or complicated cases.

*Commonwealth v. Spotz*, 47 A.3d 63, 82–83 (Pa. 2012).

In the present case, we agree with Harris that his right to counsel was violated. *See* Harris's Brief at 19. When the trial court granted Harris's request to remove his second appointed counsel, the court never explicitly informed him that it would not appoint new counsel and that he would either

have to retain private counsel or have to represent himself at both trials. *See generally* N.T., 8/18/2016. In fact, when the trial court broached the concept of appointing additional attorneys in the future ("you are going to feel the same way about your fourth, fifth?"), Harris did not state that he wanted to proceed *pro se*. *Id.* at 3. Additionally, even though the trial court asked if Harris was "ready to proceed to trial[,]" the trial court never clarified if it was asking whether Harris was ready to proceed, by representing himself. Harris never directly answered the question, his response was, "[s]ure. If that's what I have to do…." *Id.* at 5. This exchange is not a legally sufficient colloquy under Pa.R.Crim.P. 121(A)(2).

Accordingly, we vacate the judgments of sentence at both dockets and remand the cases to the trial court. Upon remand, the trial court must determine whether Harris desires to obtain private counsel, as he previously expressed, N.T. Trial (No. 6791-15), 5/15-17/2017, at 3-4, and provide Harris a specific date by which to do so. *See Prysock*, 972 A.2d 544-545.

If Harris intends to proceed *pro se*, the trial court must conduct an on-the-record colloquy pursuant to Pa.R.Crim.P. 121(A)(2). If the court determines that Harris's waiver of the right to counsel is "knowing, voluntary, and intelligent," *id.*, the trial court may appoint standby counsel. *See* Pa.R.Crim.P. 121(D); *Spotz*, 47 A.3d at 82–83.

We recognize the dilemma the trial court faced with a difficult defendant who appeared to be "lawyer-shopping," but Harris's constitutional right to

counsel required more on the record to demonstrate he understood the rights he was relinquishing. As we vacate and remand on Harris's first claim, we need not reach his remaining challenges.[7]

Judgments of sentence vacated. Case remanded with instructions. Jurisdiction relinquished.

Judge Panella joins this memorandum.

Judge Platt files a dissenting memorandum.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/01/2018

_____

[7] If Harris continues to elect not to participate in proceedings on remand, although a colloquy on the constitutional right to be present is not required when a defendant has absented himself from the courtroom, *see* ***Commonwealth v. Hill***, 737 A.2d 255, 261-262 (Pa. Super. 1999), it may be prudent to advise Harris on the ramifications of his refusal to attend. ***See Commonwealth v. Faulk***, 928 A.2d 1061, 1066 (Pa. Super. 2007) ("Such an inquiry would necessarily include, at a minimum, a discussion of whether the defendant understands that if trial proceeds without his presence: (1) he would be unable to participate in the selection of a jury; (2) he waives his right to confront and cross-examine witnesses; (3) he will not be present to testify in his own defense; and (4) any claim challenging effective assistance of counsel will be severely limited since the defendant has chosen not to participate in his defense and will be unable to aid counsel during trial." (citation omitted)).